Félix SANTONI ROIG, et al., Plaintiffs,

v.

**IBERIA LÍNEAS AÉREAS DE ESPAÑA, Defendant.**

Civ. No. 85–1078(RLA).

United States District Court,
D. Puerto Rico.

June 20, 1988.

Carlos T. González Contreras, Vazquez, Vizcarrondo, Alvarez, Angelet & Gonzalez, Hato Rey, P.R., Miguel A. Cabrera, Santurce, P.R., Alberto Acevedo Colón, Hato Rey, P.R., for plaintiffs.

Miguel Palou Sabater, Ledesma, Palou & Miranda, Hato Rey, P.R., Edward Brill, Proskauer Rose Goetz & Mendelsohn, New York City, for defendant.

## OPINION AND ORDER

ACOSTA, District Judge.

### BACKGROUND

This action was originally instituted in state court by individuals formerly employed with Iberia Líneas Aéreas de España ("Iberia") seeking relief pursuant to various Puerto Rico labor statutes. The case was removed to the federal forum and after a series of procedural obstacles the Puerto Rico Secretary of Labor assumed representation of the plaintiffs.

Plaintiffs seek relief pursuant to Puerto Rico labor laws which specifically provide claims for:

1. dismissal without just cause, 29 L.P.R.A. § 185a *et seq.*;

2. minimum wages, 29 L.P.R.A. § 245 *et seq.*; and

3. overtime, 29 L.P.R.A. § 271 *et seq.*

Iberia has moved the Court to enter summary judgment in its favor alleging that the state law claims are preempted by federal statutes and, in the alternative, that plaintiffs are estopped from requesting payment of sums in addition to the severance pay they have already received because all plaintiffs signed general releases in favor of Iberia in exchange for cash payments.

### UNCONTESTED FACTS

According to the joint pretrial order submitted by the parties on March 4, 1987 (docket No. 105), the following facts are not in controversy.

1. Iberia is a carrier by air within the meaning of section 201 of the Railway Labor Act ("RLA"), 45 U.S.C. § 181, and is subject to the provisions of the RLA.

2. The International Association of Machinists ("IAM") is the labor representative, under the RLA, of Iberia's employees in the United States, including Puerto Rico.

3. Iberia and the IAM were parties to an Agreement effective by its terms from January 1, 1981, through December 31, 1982, and subject to change thereafter in accordance with the procedures of the RLA, covering the rates of pay, rules, and working conditions.

4. On March 29, 1985, following approximately two and a half years of negotiation and mediation as required by the RLA,

Iberia and the IAM reached an agreement as to changes in the 1981 Agreement. The March 29, 1985 Agreement continued in effect all provisions of the prior Agreement which were not changed.

5. The March 29, 1985 Agreement between Iberia and the IAM specifically provided that Iberia had the right to contract out all or any part of the work at the airports which was performed by employees in classifications included in the 1981 Agreement. The March 29, 1985 Agreement further provided that any employee whose employment with Iberia was terminated because the work which he had been performing was contracted out, was eligible to receive severance pay, in an amount to be computed based on a formula set forth in the Agreement. The Agreement also provided certain other benefits including an early retirement plan, extended medical insurance, and travel benefits for employees whose jobs were eliminated as a result of the contracting out of their work.

6. Beginning on March 30, 1985, Iberia contracted out most of the airport work in San Juan, Puerto Rico and at the John F. Kennedy Airport in New York, in accordance with the terms of the March 29, 1985 Agreement, and terminated the employment of airport employees in the affected classifications including the plaintiffs named in the complaint.

7. The IAM is the labor representative, under the RLA, of Iberia's employees in the United States, including Puerto Rico, in the crafts or classes of (1) Clerical, Office, Fleet and Passenger Service Employees; (2) Communications System and Lead Communications Systems Operators—Teletype; and (3) Dispatchers and Assistant Dispatchers. Each of the plaintiffs was employed by Iberia prior to March 30, 1985 in a classification within one of the three said crafts or classes, and was represented for the purposes of the RLA by the IAM.

8. None of the plaintiffs has presented any grievance pursuant to the terms of the Collective Bargaining Agreement over the alleged failure by Iberia to pay the amounts claimed to be due in the complaint, nor has any such claim been submitted by plaintiffs, or by the IAM, to the System Board of Adjustment, established by the Iberia–IAM Agreement.

9. All of the plaintiffs have accepted payment by Iberia as full and complete satisfaction of any and all amounts which may be owed by Iberia, arising out of their employment therewith, and have duly executed a General Release in favor of Iberia.

## ARGUMENT

### RAILWAY LABOR ACT

 We shall first discuss what effect, if any, the Railway Labor Act ("RLA" or "the Act") 45 U.S.C. § 151–163, has on local wrongful dismissal claims.

Iberia contends that the controversy over the propriety of plaintiffs' discharge is a "minor dispute" which under the provisions of the RLA must be resolved by way of arbitration and is thus preempted by the Act.

The RLA embodies a federal labor policy securing the right of self-organization among employees of interstate carriers and promoting the orderly settlement of controversies concerning rates of pay, rules, and working conditions through a compulsory arbitration process. The statute seeks to avoid any interruption of commerce or of the operation of carriers engaged therein. 45 U.S.C. § 151a. The RLA was extended to air carriers engaged in interstate or foreign commerce and employees of such air carriers, 45 U.S.C. § 181. The benefits, duties, and privileges are specified in 45 U.S.C. § 182.

Pursuant to the RLA, "minor disputes" are controversies arising from the "interpretation or application of agreements concerning rates of pay, rules, or working conditions ..." 45 U.S.C. § 153 First (i). See also Atchinson, Topeka and Santa Fe Ry. Co. v. Buell, 480 U.S. 557, 107 S.Ct. 1410, 1414, 94 L.Ed.2d 563 (1987); Miller v. Norfolk and Western Ry. Co., 834 F.2d 556, 561 (6th Cir.1987).

"Major disputes" are those which pertain to the formation or modification of agreements establishing rates of pay, rules, or

working conditions. *Atchinson,* 107 S.Ct. at 1414.

The exclusive jurisdiction for resolution of "minor disputes" lies with the arbitration mechanism and those proceedings will provide the only remedy available to a claimant. *Atchinson,* 107 S.Ct. n. 9 at 1414; *Andrews v. Louisville & Nashville Railroad Company,* 406 U.S. 320, 325, 92 S.Ct. 1562, 1565, 32 L.Ed.2d 95 (1972); *Miller v. Norfolk,* 834 F.2d at 561; *Mayon v. Southern Pacific Transp. Co.,* 805 F.2d 1250, 1251 (5th Cir.1986).

In other words, an arbitration board must resolve all "minor disputes" and neither the federal nor the state court have jurisdiction to entertain them. *Miller v. Norfolk,* 834 F.2d at 561; *Carroll v. Norfolk Southern Corp.,* 647 F.Supp. 1319, 1320 (M.D.Ala.1986).

Judicial review from resolutions by an arbitration board of "minor disputes" is extremely narrow. *Atchinson, supra,* 107 S.Ct. at 1414; *Andrews, supra,* 406 U.S. at 325, 92 S.Ct. at 1565.

The practical effect is that when a court finds an issue presented for resolution to be a minor dispute it must dismiss the claim for want of jurisdiction.

A plaintiff may not avoid the mandatory arbitration process by asserting a state cause of action. Artful pleading cannot disguise what is truly a minor dispute under the RLA. *Miller v. Norfolk,* 834 F.2d at 562.

However, different considerations apply when the claims asserted in a complaint are based on independent statutory rights rather than disputes over conditions which appear exclusively in an agreement. So long as plaintiffs allege to be entitled to a relief provided by a legal source other than a collective bargaining agreement promoting fair employment practices or legitimate government concerns, the claim will not be preempted by the mandatory arbitration proceedings under the RLA.

### A. Preemption

The issue of preemption of state wrongful discharge claims by the RLA was addressed by the Supreme Court in *Andrews*

*v. Louisville & Nashville Railroad Company,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). Plaintiff commenced a suit against a railroad, his former employer, for wrongful discharge based on state law. The Court ruled that regardless of plaintiff's characterization of his claim as "wrongful discharge," given the fact that "the only source of [plaintiff's] right not to be discharged, and therefore to treat an alleged discharge as a 'wrongful' one that entitles him to damages, is the collective-bargaining agreement" claimant's exclusive remedy was the arbitration process. 406 U.S. at 324, 92 S.Ct. at 1565.

*Andrews* thus held that the determination of the extent of the railroad's obligation to keep plaintiff within its employ revolved on an interpretation of the collective-bargaining agreement and hence, was a "minor dispute" and had to be resolved by way of arbitration. In other words, since the right to employment stemmed from the contract itself, the wrongful discharge claim was a "minor dispute" subject to the exclusive arbitration forum because the controversy hinged on the interpretation of the agreement.

In a recent opinion, the Supreme Court moved away from mandatory arbitration in cases dealing with disputes that, even though part of the collective bargaining agreement, sought to vindicate a right that arose not from the agreement itself, but from an independent statute.

In *Atchinson, Topeka and Santa Fe Ry. Co. v. Buell,* 480 U.S. 557, 107 S.Ct. 1410, 1415, 94 L.Ed.2d 563 (1987), a railroad employee sued his employer under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.,* for injuries resulting from harrassment by his superior and fellow workers during the course of his employment. The railroad argued the claim was subject to arbitration pursuant to the terms of the agreement and hence, the trial court lacked jurisdiction to entertain the suit.

The Supreme Court found that the fact that plaintiff was seeking relief for damages "caused by conduct that may have been subject to arbitration under the RLA does not deprive an employee of his oppor-

tunity to bring an FELA action for damages." *Atchinson,* 107 S.Ct. at 1415. The Court found that the purpose of the RLA is to promote resolution of labor disputes through an elaborate arbitration procedure with limited relief whereas the FELA, by contrast, is a broad remedial statute providing employees with a legal recourse for negligent conduct separate from their obligations under the terms of an agreement and which allows for ample, appropriate relief to injured workers. Citing *Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 737, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) the Court held that despite the public interest in arbitration, "different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers." *Atchinson,* 107 S.Ct. at 1415.

The Court acknowledged that in some situations arbitration was mandatory for minor disputes that arose from the breach of an agreement pursuant to the RLA, but went on to find that it was Congress' intention in enacting FELA to allow employees negligently injured at their jobs to vindicate those rights directly in a court of law.

Even though in *Atchinson* there was a choice-of-law problem between two federal statutes, we still find its analysis helpful in our determination of the preemption claim raised by Iberia.

*Barrentine, supra,* did not involve the RLA. In that case the controversy was about a minimum wage claim under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* as amended (FLSA) that was filed in court after it had been submitted to arbitration. The court of appeals found that in situations where the agreement provided for arbitration of wage disputes under FLSA and the parties voluntarily submitted them to arbitration, they were barred from asserting them in court.

The Supreme Court balanced the interest behind statutes promoting the collective bargaining process together with arbitration and those providing guarantees to "specific substantive rights." *Barrentine,* 450 U.S. at 734, 101 S.Ct. at 1441. The

Court was confronted with the problem of how to deal with the vindication of substantive rights secured by statutes which were also incorporated in collective bargaining agreements requiring arbitration. The Court reasoned that the FLSA granted individual workers claims for minimum wages at the judicial forum which could be lost if allowed to be vindicated solely by arbitration because it would be incumbent upon the union to assert them. It also mentioned the fact that arbitrators were not familiar with special labor statutes as well as the limited nature of the relief available through the arbitration process.

In ascertaining whether or not a state defamation suit was preempted by the RLA, the court in *Miller v. Norfolk and Western Ry. Co.,* 834 F.2d 556 (6th Cir. 1987), held that the crucial factor was whether or not the right asserted existed independent from rights created by the agreement. Should resolution of the state claim require interpretation or application of the agreement, "[i]t is in that sense that the state claim is considered to be inextricably intertwined with the matrix of the federal labor law." *Miller,* 834 F.2d at 565.

Although involving the Labor Management Relations Act, 29 U.S.C. § 185 (LMRA), yet using a similar analysis, *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), *supra,* focused on whether or not the claim asserted was based on a right secured by a statute as opposed to the contract between the parties. Plaintiff filed a tort action based on bad faith handling of his disability insurance claim. He never followed the procedure set out in the agreement for resolution of issues pertaining to insurance-related complaints. In deciding the preemption controversy, the Supreme Court ruled that the key factor is whether or not the right asserted or conduct complained of through a state cause of action exists *independently* from the private agreement. In other words, only those state law actions that "do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are preempt-

ed by those agreements." *Allis–Chalmers*, 471 U.S. at 213, 105 S.Ct. at 1912.

The Supreme Court reasoned that the tort claim was dependent on a contractual obligation since the labor contract provided for payment of insurance benefits and the question of the "manner" of processing the claims and making those payments necessarily required an interpretation of the agreement.

> The duties imposed and rights established through the state tort thus derive from the rights and obligations established by the contract.

*Allis–Chalmers*, 471 U.S. at 217, 105 S.Ct. at 1914.

In examining the preemption issue, the Supreme Court also concluded that allowing for contract claims to be restated as local tort claims would interfere with the federal labor scheme and undermine the effectiveness of the arbitration process.

In addition, the RLA is a labor statute geared essentially to foster arbitration and does not set out minimum labor standards, *Metropolitan Life Ins. Co. v. Mass.*, 471 U.S. 724, 105 S.Ct. 2380, n. 32 p. 2399, 85 L.Ed.2d 728 (1985); *Terminal R. Ass'n v. Brotherhood of R. Trainmen*, 318 U.S. 1, 7, 63 S.Ct. 420, 423, 87 L.Ed. 571 (1943); *Norman v. Missouri Pacific Railroad*, 414 F.2d 73, 82–83 (8th Cir.1969); *Muncy v. Norfolk and Western R. Co.*, 650 F.Supp. 641, 643 (S.D.W.Va.1986). Accordingly, it did not intend to exclude all state legislation issued pursuant to a legitimate police power for the protection of the health and safety of its residents. The cases dealing with specific provisions pertaining to safety of employees or anti-discrimination statutes have rejected preemption defenses.

In *Terminal R. Ass'n. v. Brotherhood of R. Trainmen*, 318 U.S. 1, 63 S.Ct. 420, 87 L.Ed. 571 (1943), the Supreme Court upheld local legislation requiring cabooses for railroad employees essential to safe working conditions. The court rejected arguments that the RLA precluded such "interference." Although it was a dispute over working conditions since a contract between the parties did provide for some caboose service the court concluded that the RLA did not occupy the field to the exclusion of the law in question.

■ The RLA does not intend to preempt state regulations issued to protect the health and safety of its residents if issued pursuant to a legitimate concern. The purpose behind the federal statute is to avoid labor conflicts that might interfere with interstate commerce. The way to accomplish this is by enacting provisions that mandate a comprehensive arbitration mechanism that will allow for the resolution of conflicts without disruption in railroad and air transportation. However, the RLA does not, in and by itself, provide for minimum standards for working conditions.

> The Railway Labor Act, like the National Labor Relations Act, does not undertake governmental regulation of wages, hours or working conditions. Instead it seeks to provide a means by which agreement may be reached with respect to them. The national interest expressed by those Acts is not primarily in the working conditions as such. So far as the Act itself is concerned these conditions may be as bad as the employees will tolerate or be made as good as they can bargain for. The Act does not fix and does not authorize anyone to fix generally applicable standards for working conditions. The federal interest that is fostered is to see that disagreement about conditions does not reach the point of interfering with interstate commerce.

*Terminal*, 318 U.S. at 6, 63 S.Ct. at 423 (footnote omitted).

The Supreme Court has found that a local statute forbidding racial discrimination in employment was not preempted by the RLA. The Court noted that there is no provision against discrimination practices in the RLA; therefore it cannot be stated that it bars local anti-discrimination statutes. *Colorado Anti–Discrim. Com'n v. Continental Air Lines*, 372 U.S. 714, 724, 83 S.Ct. 1022, 1027, 10 L.Ed.2d 84 (1963). Discrimination in employment claims are separate and apart from rights created by either the RLA or the employment contract.

In *Muncy v. Norfolk,* 650 F.Supp. 641 (S.D.W.Va.1986) plaintiff, a railroad employee, suffered a work-related injury and prevailed in a FELA claim. Thereafter, he requested reinstatement alleging he had recovered and was no longer disabled. The issue was arbitrated and his reinstatement denied whereupon plaintiff sued based upon a state statute alleging discrimination based upon his handicapped condition. Defendant alleged the issue had to be arbitrated because it pertained to its right to recall under the contract. The court acknowledged that disputes arising out of an agreement, that is, either governed and/or controlled by the terms of the contract had to go to arbitration. The court went on to examine the essential elements of the state cause of action and concluded that evidence of a breach of the contract was not relevant to the local claim unless it tends to prove one of those requirements. The Court stressed the fact that the RLA was designed basically to promote collective bargaining agreements and continuity of services within a particular field and not to provide fair employment practices.

In applying the preemption analysis in the labor field, great deference is given to state legislation exercising concerns for the general health and welfare of its residents.

In *Metropolitan Life Ins. v. Mass.,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) the Supreme Court was confronted with the controversy of alleged preemption of local legislation requiring certain minimum mental health care benefits be provided under particular types of insurance. It was alleged that by making certain benefits mandatory, the legislation was interfering with the collective bargaining process and thus, preempted by the National Labor Relations Act (NLRA).

The Court gave a brief summary of preemption principles dealing with the NLRA. Preemption seeks to, in the first instance, protect the primary jurisdiction of the NLRB and second, to ensure certain conduct of unions and employees to go unregulated so as to allow the balance of power between labor and management to go free from interference.

The Court went on to find that the interests sought to be protected under the NLRA were not affected by the minimum standards required by the state.

> No incompatibility exists, therefore, between federal rules designed to restore the quality of bargaining power, and state or federal legislation that imposes minimal substantive requirements on contract terms negotiated between parties to labor agreements, at least so long as the purpose of the state legislation is not incompatible with these general goals of the NLRA.

105 S.Ct. at 2399.

These minimum labor standards are of general application to both union and non-union employees and have no direct impact on the collective bargaining process or the right of self organization. The NLRA does not seek to preempt local minimum labor standards that have no bearing on the right of self-organization and the bargaining process.

The court recognized the traditional importance of the state's police power when regulating health and safety areas.

> Massachusetts' mandated-benefit law is an insurance regulation designed to implement the Commonwealth's policy on mental-health care, and as such is a valid and unexceptional exercise of the Commonwealth's police power ... it does not limit the rights of self-organization or collective bargaining protected by the NLRA, and is not pre-empted by that Act.

105 S.Ct. at 2399.

We must now look at the particular Puerto Rico statute at issue to ascertain whether the wrongful dismissal claims are to be arbitrated as "minor disputes" or whether they can be litigated as independent causes of action.

### B. *Dismissal Without Cause*

■ Puerto Rico's wrongful dismissal statute, Law No. 80 of May 30, 1976, 29 L.P.R.A. §§ 185a–185 *l,* provides that employees dismissed without "just cause" shall be entitled to severance pay computed on the basis of the length of their employ-

ment. The purpose behind the statute is to effectively protect employees against arbitrary dismissals by allowing for certain economic relief upon termination of employment. *Secretario del Trabajo v. I.T.T.,* 108 D.P.R. 536 (1979).

The relief available under Law 80 is limited to severance pay and a former employee is not entitled to reinstatement. The statute does not allow for any other civil liability on account of a dismissal without just cause. *Rivera v. Security Nat. Life Ins. Co.,* 106 D.P.R. 517 (1977).

The statute further provides that the right to severance pay cannot be waived and any such contract is deemed to be null and void, 29 L.P.R.A. § 185i.

Contrary to *Andrews,* (wrongful dismissal claim must be arbitrated as "minor dispute" since the only source of right to employment was the agreement) in Puerto Rico, employees hired for an unlimited period of time are entitled, by law, to continued employment and can only be dismissed for "just cause." Hence, there is an independent statute that provides for a separate cause of action for monetary relief regardless of the terms of the collective bargaining agreement.

As explained in the Statement of Motives of Law 80, the local legislation was issued pursuant to a legitimate state interest, i.e., to provide an effective mechanism of adequate relief to dismissed employees and to deter arbitrary terminations.

We do not see Law 80 as unduly interfering with the RLA scheme of promoting agreements between carriers and its employees by providing them with security in employment.

Plaintiffs in this suit are not seeking compliance with the terms of their contract: Whatever may have been due pursuant to the Agreements is not at issue in this litigation. Instead, plaintiffs request relief under a particular local statute. In pursuing their dismissal without cause claim, plaintiffs will have to prove that: (1) they were employed for an indefinite period of time and (2) that they were dismissed without "just cause" within the meaning of Law 80. 29 L.P.R.A. § 185a. Whether or not there was "just cause" for dismissal will be strictly determined under the provisions of Law 80. In short, plaintiffs' rights under the Puerto Rico statute at issue here are fully independent of their rights and duties under the Agreement or contract they executed with defendant. *Allis–Chalmers,* 471 U.S. at 213, 105 S.Ct. at 1912. In this way, we find that Law 80 does not interfere with the RLA. *See Terminal,* 318 U.S. at 6, 63 S.Ct. at 423. In addition, we do not find that this local action is preempted by the RLA because we are dealing here with Puerto Rico legislation that greatly concerns the general welfare of its citizens insofar as it seeks to promote fair employment practices in the labor market by guaranteeing security in employment. Law 80 does not disrupt the RLA scheme of promoting collective-bargaining agreements with their concomitant arbitration clauses by requiring that employees be dismissed only due to "just cause."

Lastly, the fact that the agreement allowed Iberia to "contract out" services and thus, envisioned laying off personnel is not conclusive as to whether or not there was "just cause" within the meaning of Law 80 especially if we take into consideration the fact that the rights under the local statute are not waivable. 29 L.P.R.A. § 185i. A final determination of liability under Law 80 will have to be made at trial.

## MINIMUM WAGE/OVERTIME

Puerto Rico has enacted minimum wage and overtime provisions at 29 L.P.R.A. § 245 *et seq.* and 29 L.P.R.A. § 271 *et seq.* Plaintiffs claim Iberia violated these local statutes. They allege that, despite having worked overtime during rest time and meal periods they were not compensated according to local law. Plaintiffs further allege they were not paid for the first three weeks of employment.

Iberia contends that the local statutes providing for minimum wages and overtime are inapplicable to employees of air carriers. First, it argues that the FLSA, at 29 U.S.C. § 213(b)(3) specifically exempts this category of employees from the statute's

overtime requirements and hence, preemption principles preclude a local provision imposing overtime. Second, Iberia suggests that the fact that the Federal Aviation Act (FAA) at 49 U.S.C.App. § 1421(a)(5) empowers the Secretary of Transportation to periodically prescribe and revise

> (5) Reasonable rules and regulations governing, in the interest of safety, the maximum hours or periods of service of airmen, *and other employees*, of air carriers.... (emphasis ours.)

local statutes cannot legislate with regard to overtime and minimum wages for air carrier employees.

However, the FLSA does allow for stricter or more beneficial state regulations providing for minimum wages and overtime to apply to employees which are covered or exempted from such provisions in the FLSA. 29 U.S.C. § 218(a) provides:

> No provision of this chapter or of any order thereunder shall excuse noncompliance with any ... state law ... establishing a minimum wage higher than the minimum wage established under this chapter or a maximum work week lower than the maximum workweek established under this chapter....

In other words, state laws will prevail where more beneficial.

> The fact that a worker is exempt from the FLSA does not unqualifiedly release his employer from minimum-wage, equal-pay, overtime-pay, or child-labor responsibilities—the worker may be entitled to a similar benefit under a state law. The FLSA expressly says that its provisions do not excuse noncompliance with state laws which establish higher standards. For example, a worker may be exempt from the FLSA overtime-pay directive but a state law may require that he be paid overtime for hours worked in excess of eight daily. The employer may not ignore the state law by reason of the federal law.

1 C.C.H. *Labor Law Reporter, Wages Hours,* para. 24,910.

Furthermore, the FAA, at 49 U.S.C.App. § 1371(k)(1), covers rates of compensation and maximum working hours but only for pilots and copilots which is not the case here. It is obvious that there is a special interest in establishing a ceiling for working hours of persons in control of an aircraft to ensure the safety of passengers.

Although 49 U.S.C.App. § 1421(a)(5) allows the federal system to regulate maximum hours of service of "airmen and other employees, of air carriers ..." we have not come across any such provision that would indicate plaintiffs herein who are not pilots or copilots cannot assert their local causes of action.

In sum, we find no reason to exempt plaintiffs herein from the local minimum wages and overtime provisions on preemption grounds.

## ESTOPPEL/SET–OFF

■ Iberia concludes by raising collateral estoppel arguments to the effect that plaintiffs signed an agreement whereby Iberia could contract out work in exchange for certain severance pay and cannot now, after two and a half years of negotiations, recant from their previous commitment.

We do not agree. First of all, 29 L.P.R. A. § 185i specifically provides that claims under Law 80 may not be waived and any such contract is null and void. Again, whether or not there was just cause for termination will have to be decided based on evidence presented by defendant as provided by the statute.

In addition, we agree with plaintiffs' arguments to the effect that the rights conferred by the local minimum wages and overtime statutes seek to protect a compelling public interest and cannot be waived through a general release upon termination of employment.

■ Lastly, should the Court find that plaintiffs are entitled to compensation under local law, Iberia contends it is entitled to a set-off with respect to the amounts already paid.

This argument is unconvincing. Pursuant to 32 L.P.R.A. § 3120, cross-claims and counterclaims are not allowed in proceed-

ings instituted against an employer for collection of benefits or sums allegedly owed an employee under the local labor statutes.

## CONCLUSION

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the Court may enter judgment if there is no triable issue of material fact present and movant is entitled to the decision as a matter of law. *Kennedy v. Josephthal & Co., Inc.,* 814 F.2d 798, 804 (1st Cir.1987).

We find that, as a matter of law, the local statutes providing for dismissal without just cause, 29 L.P.R.A. § 185a *et seq.* minimum wages, 29 L.P.R.A. § 245 *et seq.* and overtime 29 L.P.R.A. § 271 *et seq.* are not preempted by federal legislation.

We further find that further exploration of the facts will be necessary in order to ascertain whether or not there was just cause for dismissal within the meaning of Law 80.

Based on the foregoing, Iberia's Motion for Summary Judgment filed on January 22, 1987 (docket No. 102) is hereby DENIED.

IT IS SO ORDERED.