**Edward R. BETTENCOURT,**
**Plaintiff, Appellant,**

v.

**BOSTON EDISON COMPANY,**
**Defendant, Appellee.**

No. 77–1053.

United States Court of Appeals,
First Circuit.

Argued May 2, 1977.
Decided Sept. 6, 1977.

Fred Pearlmutter, Lynn, Mass., for plaintiff, appellant.

Lawrence M. Kearns, Boston, Mass., with whom Morgan, Brown, Kearns & Joy, Boston, Mass., was on brief for defendant, appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, DOOLING, District Judge.*

LEVIN H. CAMPBELL, Circuit Judge.

Appellant Edward R. Bettencourt filed this action in Massachusetts Superior Court on April 15, 1975 against his former employer, Boston Edison Company, for damages resulting from breach of his contract of employment as an assistant watch engineer. The action was removed to the district court which had original jurisdiction under 29 U.S.C. § 185. The Company's answer raised the defense that Bettencourt's sole remedy for termination of his employment was to follow the grievance and arbitration procedures contained in the collective bargaining agreement between the Company and Bettencourt's union. The contract provides that the procedures shall be "final and binding". The district court stayed all proceedings pending outcome of arbitration which had been commenced by the union on behalf of Bettencourt. The matter was then extensively tried before

---

* From the Eastern District of New York, sitting by designation.

the arbitrator, who issued a detailed opinion holding that Bettencourt's termination was not in violation of the collective bargaining agreement. Summary judgment was thereupon granted for defendant. Bettencourt appeals.

At about 8 p.m. on Saturday, March 10, 1973, while at work, Bettencourt slipped and fell down some stairs, injuring his right hip. He filled out the Company's Personal Injury Report Form at the time, reporting that he administered first aid to himself and lost no time due to the accident. He declined medical assistance or an offer to leave work early from his supervisor. Bettencourt had previously agreed to work an hour of overtime, 11:00–12:00 p.m., past his normal shift, and his Weekly Time Report, signed by him, indicates that he did work the additional hour. Bettencourt claimed that he left at 11:00, but the arbitrator found that he worked the hour of overtime.

On the following day, Bettencourt called in sick with a sore back. An absence notification form was filled out at the time, and next to the space marked "Probable Duration" was a question mark. Bettencourt next contacted the Company on Friday, March 16, when he phoned to request an emergency vacation. The Company informed him that because he had been out sick he would first have to be cleared by the medical department. In response, Bettencourt asked that his accident report be torn up. The Company declined to do so. Bettencourt, who said his doctor told him to stay put, declined to go to the medical department and said he would stay out on an industrial accident. Soon thereafter, the Company filed a first report of injury with its insurer, Liberty Mutual.

The following week, Bettencourt complained to his union that he was not being paid. The union made inquiry, and the Company informed it that Bettencourt would be suspended when he returned to work and this information was passed on to Bettencourt along with a union accident form. Bettencourt completed the form and returned it to the union. On April 19, a Company official, Mr. Robinson, visited Bettencourt in his home and informed him that he was being suspended. Robinson testified that he observed Bettencourt walking around normally and that Bettencourt said he was feeling fine. By registered letter sent the same day, the Company confirmed Bettencourt's suspension "for being absent without permission". A hearing on the suspension was scheduled for April 24, and Bettencourt admits to receiving notification of the hearing. Nevertheless he did not appear at the hearing, and efforts to contact him were unsuccessful. By registered letter dated April 24, the Company informed Bettencourt that he was being terminated as a "voluntary quit". The Company did not cite any authority for its action, but it later would rely on its right under Article V of the collective bargaining agreement "to suspend, discipline, demote or discharge employees".

On May 4, 1973 Bettencourt filed a claim for workmen's compensation with the Massachusetts Industrial Accident Board. The claim was contested by Liberty Mutual. The Board defined the issues before it as follows:

"1. Whether the employee sustained an injury arising out of and in the course of his employment.

"2. If such an injury is found to have occurred, whether or not he sustained any disability.

"3. If so, the degree and extent of same.

"4. Causal relationship between any disability as found and any personal injury as found."

These issues were resolved in Bettencourt's favor.[1] The Board on July 15, 1974, found that he had sustained a personal injury arising out of and in the course of his employment; that he had been totally inca-

---

1. The single Board member who heard the matter apparently credited a report from Bettencourt's personal physician over that of the insurer's physician. Bettencourt was the only witness. The injury found was "lumbro-sacral strain; right hip strain; contusion of lumbrosacral area; contusion of buttocks." Treatment consisted of rest, ASA, physiotherapy, manipulation, support, hot soaks and diathermy. X-rays were all negative.

pacitated for work from March 11, 1973 to July 24, 1973; that he had been partially incapacitated for work from July 24, 1973 to October 25, 1973; and that both his total and partial incapacity were causally related to his personal injury. The Company's insurer paid the ordered compensation. No appeal was taken.

On April 30, 1973, the union advised the Company that it was appealing Bettencourt's termination under Article XXXI of the collective bargaining agreement. This article gives the union the right to appeal an employee's discharge, to confer with the Company, and to request a hearing. If after the hearing, the parties disagree as to whether to reinstate the employee, the disagreement is subject to the grievance and arbitration procedure. The union took no further action under this Article until after the decision of the Industrial Accident Board. On September 12, 1974 it requested that a conference be held. A meeting was held on November 24, 1974. The Company maintained that Bettencourt was a "voluntary quit" and the Union disagreed. The Union then wrote the Company on December 27, 1974, referring to its "refus[al] to respond to the Local's appeal under the provisions of Article XXXI" and requesting a hearing under the provisions of Article XXXIII. This Article defines the procedures for arbitration, and a hearing was one of the first steps. Under Article V of the agreement, a claim that the Company "has exercised the right to suspend, discipline, demote or discharge employees in an unjust or unreasonable manner" is subject to arbitration. In a letter to Bettencourt's attorney on March 28, 1975, the union advised that the Company had refused to meet with it, contending that Bettencourt's status "is not a proper subject under the Collective Bargaining Agreement."

This action was brought in state court on April 15, 1975. On May 12, 1975 the union filed a "Demand for Arbitration" stating the nature of the dispute as "Employee Edward R. Bettencourt was terminated on March 10, 1973, in violation of the Collective Bargaining Agreement". The Company's answer to the complaint, filed on May 28, 1975, raised the defense that Bettencourt's sole remedy was to follow the grievance and arbitration procedures set forth in the Collective Bargaining Agreement. Reference was made to paragraph 1(f) of Article XXXIII of the agreement which provides that arbitration "shall be final and binding upon both parties". It was at this stage that the district court stayed further proceedings pending report of the arbitrator.

After a hearing, the arbitrator found that the Company had a reasonable basis for suspending Bettencourt on April 19. "Mr. Bettencourt's response to his suspension as something he was expecting [;] . . . [his] failure to appear at his suspension hearing; his failure to come forward with some offer of proof as to his condition at the time these events were taking place; and the complete absence of any persuasive excuse for not doing so only lead to the conclusion that he had no justifiable grounds for his absence". Noting evidence that the Company had in the past treated similar cases as voluntary quits, the Board went on to hold that Bettencourt's termination on April 24 "was not in violation of the contract between the parties".

On appeal, Bettencourt asserts error in the granting of summary judgment in favor of the Company on Bettencourt's claim for breach of contract after it had been determined by arbitration that Bettencourt's termination did not violate the Collective Bargaining Agreement. However, as none of the limited grounds for reviewing an arbitration award is present here, we hold that summary judgment was properly entered for the Company.

■ Where parties to a collective bargaining agreement have provided for arbitration as the final and binding method for settling grievances the arbitration award is normally non-reviewable by a court. *See General Drivers, Warehousemen & Helpers, Local 89 v. Riss & Co.*, 372 U.S. 517, 519, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 4

L.Ed.2d 1424 (1960). *See also Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). The rule of non-reviewability serves the legislative policy that "[f]inal adjustment by a method agreed upon by the parties is . . . the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." 29 U.S.C. § 173(d). An arbitration award subject to judicial review would be neither final nor binding.

■ Exceptions to the rule of non-reviewability are, therefore, few and of a most limited nature. The Supreme Court has said that courts will not enforce an arbitration award which manifests the arbitrator's infidelity to his obligation to interpret and apply the collective bargaining agreement, *Enterprise Wheel, supra,* 363 U.S. at 597, 80 S.Ct. 1358; but just because a court would interpret the contract differently from the arbitrator does not provide a basis for overruling him. *Id.* at 599, 80 S.Ct. 1358. *See, e. g., Miller v. Spector Freight Systems, Inc.,* 366 F.2d 92 (1st Cir. 1966) (no review except for question of arbitrator's jurisdiction or improper conduct); *compare Electronics Corporation of America v. International Union of Electrical Radio and Machine Workers, Local 272,* 492 F.2d 1255, 1257 (1st Cir. 1974). Appellant cites a standard announced by the fifth circuit:

> "[w]hether the award in this case was so unfounded in reason and fact, so unconnected with the wording and purpose of the collective bargaining agreement as to 'manifest an infidelity to the obligation of the arbitrator.'"

*Brotherhood of Railroad Trainmen v. Central Georgia Railway Co.,* 415 F.2d 403, 415 (5th Cir. 1969), *cert. denied,* 396 U.S. 1008, 90 S.Ct. 564, 24 L.Ed.2d 500 (1970), *quoting United Steelworkers v. Enterprise Wheel & Car Corp., supra,* 363 U.S. at 597, 80 S.Ct. 1358.

Bettencourt argues various ways in which the award was supposedly "unfounded in reason and fact". He says that the arbitrator exceeded his authority by failing to treat the findings of the Industrial Accident Board as res judicata. He asserts that the Company waived its rights to proceed by arbitration because of an early repudiation of the collective bargaining agreement. Finally, attacking individual findings and the reasoning process of the arbitrator, he contends that the arbitration award cannot stand because it is a succession of "non-facts".

■ The arbitrator considered the res judicata argument and rejected it on what seem to us to be reasonable grounds. He found the scope of the two proceedings to be different, the discharge being based, in effect, not solely or even mainly on whether or not Bettencourt had sustained a compensable injury but on Bettencourt's unsatisfactory pattern of conduct and dealings with the company concerning his employment following the alleged injury. The arbitrator also pointed out the limited evidence before the Industrial Accident Board, and referred to precedent supporting the view that its proceedings would not be binding. We find no such "manifest error of law" as would lead us to review the arbitrator's conclusions in this regard.

Appellant argues that he had a right to sue for damages resulting from his termination without being bound by results of the grievance and arbitration procedures because, at the time the action was brought, the Company had indicated that it was not going to follow the grievance and arbitration process. In *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), discussing under what circumstances an individual employee may obtain judicial review of his breach of contract claim without having exhausted the grievance and arbitration procedures, the Supreme Court said,

> "An obvious situation in which the employee should not be limited to the exclusive remedial procedures established by the contract occurs when the conduct of the employer amounts to a repudiation of those contractual procedures. . . . In such a situation (and there may of course be others), the employer is estopped by his own conduct to rely on the

*unexhausted* grievance and arbitration procedures as a defense to the employee's cause of action." [Emphasis supplied.] *Id.* at 185, 87 S.Ct. at 914 (citations omitted).

■ Here, however, the grievance and arbitration procedures are not "unexhausted". The parties eventually did go forward with arbitration, albeit after some foot-dragging by the Company. The question is not whether a party who has repudiated the arbitration procedures can defend against a breach of contract claim on the ground that the other party must comply with those procedures. The issue having been decided by arbitration, there is no support for giving Bettencourt another bite at the apple by subjecting the arbitration award to judicial review or letting him litigate his breach of contract claim.

■ Bettencourt argues that the arbitrator's findings were so erroneous that, considered cumulatively, they reveal partiality toward the Company. It may be that some of the arbitrator's findings and some steps in his reasoning process are questionable. For example, the support for his finding that Bettencourt worked the extra hour of overtime on March 10 is debatable; his statement that Bettencourt remained out of touch with the Company between March 11 and March 16 may not take into account the absence notification given on March 11 indicating an indefinite duration for his illness; and the arbitrator did not inquire into the possibility that the Company suspended Bettencourt because of a "strike situation". But appellant has to show far more than that the case might have come out the other way, or that there were gaps in the arbitrator's reasoning. At a minimum, he must establish that the award is "unfounded in reason and fact", *Brotherhood of Railroad Trainmen v. Central Georgia Railway Co., supra,* 415 F.2d at 415, is based on reasoning "so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling", *Safeway Stores v. American Bakery and Confectionery Workers, Local 111,* 390 F.2d 79, 82 (5th Cir. 1968), or is mistakenly based on a crucial assumption which is "concededly a non-fact", *Electronics Corporation of America v. International Union of Electrical, Radio and Machine Workers, Local 272, supra,* 492 F.2d at 1257.

■ This case plainly does not rise to any such level. The arbitration involved a sharp contest as to whether or not Bettencourt had behaved in a lackadaisical and irresponsible manner towards his employer or whether, given the alleged injury, his conduct had been reasonable. The arbitrator examined Bettencourt's conduct over the six weeks from the date of his injury to the date of his termination and concluded that Bettencourt's actions gave the Company reasonable and just grounds for termination. Even if the arbitration award were subject to a "substantial evidence" standard of review, it would be difficult to upset this conclusion. Under the far narrower standard of review which we are bound to apply, there is no basis whatever for the claim that the arbitrator's decision was not based on his interpretation of the contract between the parties. *See United Steelworkers v. Enterprise Wheel & Car Corp., supra,* 363 U.S. at 597, 80 S.Ct. 1358.

*Affirmed.*