**CHALLENGER CARIBBEAN CORPORATION, Plaintiff, Appellee,**

v.

**UNION GENERAL de TRABAJADORES de PUERTO RICO, Defendant, Appellant.**

**No. 89–1869.**

United States Court of Appeals, First Circuit.

Heard Feb. 9, 1990.

Decided May 22, 1990.

Paul Schachter, Newark, N.J., with whom Reinaldo Perez Ramirez, Hato Rey, P.R., and Reinhardt & Schachter, P.C., Newark, N.J., were on brief, for defendant, appellant.

Vincente J. Antonetti with whom Rosa Maria Cruz Niemiec and Goldman & Antonetti, Santurce, P.R., were on brief, for plaintiff, appellee.

Before CAMPBELL, Chief Judge, SELYA and CYR, Circuit Judges.

CYR, Circuit Judge.

Unión General De Trabajadores de Puerto Rico ("Union") appeals a district court order vacating an arbitration award of reinstatement and back pay to employees discharged by Challenger Caribbean Corporation ("Company"). The district court vacated the award on the ground that the remedy fashioned by the arbitrator disregards the severance pay remedy prescribed by law and the contract between the parties.

Under the deferential standard of review due arbitration awards in labor disputes, we conclude that the arbitral award must be affirmed in substantial part.

## I

## BACKGROUND

The Company manufactures electrical products in Canóvanas and Comerío, Puerto Rico. On December 27, 1983, the Company and the Union entered into a collective bargaining agreement ("CBA") providing for final and binding arbitration.[1] The parties contemporaneously executed a so-called "Agreement" ("Stipulation") as an integral part of the CBA.[2] In March 1986, while the CBA and the Stipulation remained in effect, the Company permanently closed its "residential breaker production line" at the Canóvanas plant, transferring it to the Comerío facility, and notified the employees that their positions at Canóvanas were being eliminated for "reasons of economy, production and efficiency."

The Union filed two grievances: one in behalf of employees laid off on March 14, the other in behalf of employees already on *temporary* layoff as of that date. The grievances were submitted to final and binding arbitration. The parties were unable to agree on a joint submission. Without objection, the arbitrator determined to "make a final determination as to the 'issue' to be resolved in this case by taking into consideration the facts presented, the evidence, the pertinent contractual provisions, the allegations of the parties, and the submission proposals ... separately offered...."[3] The arbitrator found that the Canóvanas layoffs violated the CBA and applicable provisions of Puerto Rico law. The arbitrator determined that all affected employees, including those on temporary layoff as of March 14, were entitled to reinstatement and back pay.

The Company brought suit in federal district court under Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, to vacate the arbitral award on the ground that it does not draw its essence from the CBA and the Stipulation. *See United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). The Company moved for summary judgment, and the Union moved for enforcement of the award.

The district court did not address the arbitrator's determination that the layoffs violated the CBA and Puerto Rico law, but directed its attention exclusively to the remedy selected by the arbitrator.

In reviewing the award, we find error in the remedy chosen by the arbitrator. The stipulation, as incorporated into the collective bargaining agreement, states the *specific* remedy available to employees whose grievances arise due to Challenger's actions taken pursuant to a relocation of the Canóvanas product lines.

. . . .

[U]nder the scheme envisioned by the stipulation, the discharged employees would be entitled to the severance pay

---

1. "The decision rendered by the Arbiter shall be final and binding for both parties of this Agreement and all decisions shall be rendered according to law." CBA art. XII, § 5.
   "The Arbiter shall have no authority to amend, change, detract from or add to the terms of this Agreement and/or any supplement to it." *Id.* § 6.

2. *See* Appendix A.

3. The submissions were:
   FOR THE UNION:
   1. To determine if the action taken by the Company, and of which the employees were *given notice by letter dated March 14, 1986*, was or was not justified.
   2. To determine if the dismissals carried out on that date were done in accordance with the collective bargaining agreement and applicable law.
   3. To determine the rights belonging to those employees who were in a "lay-off" situation on May (sic) 14.
   4. The arbitrator shall be possessed of all remedial authority recognized under applicable law.
   FOR THE COMPANY:
   To determine if the lay-off of the Company's employees that culminated on March 14, 1986, with a partial permanent closing of the lines of residential breakers, was or was not in violation of the existing Collective Bargaining Agreement. The arbitrator shall decide in accordance to law.

contemplated by the law [Puerto Rico Law 80, 29 L.P.R.A. § 185], crediting the money already received. That the parties would contract for a specific monetary remedy is not surprising, considering that the closing of the product lines in Canóvanas mean (sic) that both the positions and the work there would be abolished.

The remedy of reinstatement and back pay is not contemplated in Law 80. The arbitrator did not call into play any law superseding the collective bargaining agreement which makes reinstatement and back pay mandatory. Rather, recognizing the limited scope of the remedy allowed by contract and law, he chose to ignore them and fashion his own remedy....

An arbitrator does not have unfettered discretion. While he may have the power to fashion a remedy where none is created by the contract, he may not impose a remedy which directly contradicts the express language of the collective bargaining agreement.

The district court found that the arbitrator deliberately ignored the terms of the Stipulation by substituting his "own notions of industrial justice," *United Paperworkers' Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 368, 98 L.Ed.2d 286 (1987), in place of the exclusive "layoff" remedies prescribed by the Stipulation.

We agree with the district court that the Stipulation became an integral part of the CBA. We agree as well that the severance pay specifically prescribed by the Stipulation thereby became the exclusive remedy for *layoffs subject to the Stipulation.* The district court mistakenly assumed, however, that the Stipulation applied to the Canóvanas layoffs on March 14.[4] While we have no doubt that the district court's interpretation of the CBA and the Stipulation is plausible, we are satisfied that it is not the only plausible one. Unless the arbitrator's decision—that the remedial limitations contained in the Stipulation do not apply to the Canóvanas layoffs—is not

even arguably based on a plausible interpretation of the contract between the parties, the arbitral award is entitled to deference. *See Misco*, 484 U.S. at 38, 108 S.Ct. at 368.

The district court held that the award of reinstatement and back pay was specifically preempted by the exclusive severance pay remedy prescribed by the Stipulation, without first considering whether the layoffs had been effected, or need have been effected, by the Company in accordance with certain substantive provisions of the CBA proper relating to discharge from employment. The arbitrator, on the other hand, found that the Canóvanas layoffs, having been effected contrary to applicable substantive provisions of the CBA proper, did not activate the remedy limitations prescribed by the Stipulation.

## II

## DISCUSSION

"[C]ourts play only a limited role when asked to review the decision of an arbitrator." *Misco*, 484 U.S. at 36, 108 S.Ct. at 366. *See also Maine Cent. R.R. v. Brotherhood of Maintenance of Way Employees*, 873 F.2d 425, 428 (1st Cir.1989); *Georgia–Pacific Corp. v. Local 27, United Paperworkers Int'l Union*, 864 F.2d 940, 944 (1st Cir.1988); *Bayamon Can Co. v. Congreso de Uniones Industriales*, 843 F.2d 65, 66 (1st Cir.1988); *Berklee College of Music v. Massachusetts Fed'n of Teachers, Local 4412*, 858 F.2d 31, 32 (1st Cir. 1988), *cert. denied*, —— U.S. ——, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989); *Bettencourt v. Boston Edison Co.*, 560 F.2d 1045, 1048–49 (1st Cir.1977).

We do not sit as a court of appeal to hear claims of factual or legal error by an arbitrator or to consider the merits of the award. We cannot vacate the award because the arbitrator misreads the contract, where there is room to do so, nor are we authorized to reject his honest decision; whether as written, or in its translation, we are unable to determine.

---

**4.** The difficult interpretative task confronting the district court was exacerbated by the inarticulateness of the text of the arbitrator's fifty-page

judgment as to the appropriate remedy, if the contract gives him authority to decide that question. 'As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.' *Georgia–Pacific*, 864 F.2d at 944 (quoting *Misco*, 484 U.S. at 38, 108 S.Ct. at 368) (citations omitted).

The considerable deference due an arbitrator's decision "does not grant carte blanche approval to any decision that the arbitrator might make...." *International Bhd. of Firemen Local 261 v. Great N. Paper Co.*, 765 F.2d 295, 296 (1st Cir. 1985).

'The arbitrator may not ignore the plain language of the contract.' If the language of an agreement is clear and un-equivocal, an arbitrator cannot give it a meaning other than that expressed by the agreement.

*Georgia–Pacific*, 864 F.2d at 944 (quoting *Misco*, 484 U.S. at 38, 108 S.Ct. at 369) (citation omitted). *See also S.D. Warren Co. v. United Paperworkers' Int'l Union, Local 1069*, 845 F.2d 3, 7–8 (1st Cir.1988) (vacating arbitrator's remedy as contrary to those predetermined in CBA); *Hoteles Condado Beach v. Union De Tronquistas, Local 901*, 763 F.2d 34, 41 (1st Cir.1985) (arbitrator may not disregard unambiguous provisions in CBA). An arbitral award may be vacated where the arbitrator's

interpretation is 'unfounded in reason and fact, is based on reasoning so palpa-bly faulty that no judge or group of judges could ever conceivably have made such a ruling, or is mistakenly based on a crucial assumption which is decidedly a non-fact.'

*In re Hotel Da Vinci*, 797 F.2d 33, 34 (1st Cir.1986) (quoting *Bettencourt*, 560 F.2d at 1048). *See also Local 1445, United Food & Comm'l Workers Union v. Stop & Shop Cos.*, 776 F.2d 14, 21 (1st Cir.1985); *Trust-*

*ees of Boston Univ. v. Boston Univ. Chapter, Am. Ass'n. of Univ. Professors*, 746 F.2d 924, 926 (1st Cir.1984). An "arbitrator's award settling a dispute with respect to the interpretation and application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." *Misco*, 484 U.S. at 38, 108 S.Ct. at 368. When an award "manifest[s] an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct. at 1361.

Yet as we often emphasize, exceptions to the general rule that courts are not to review the merits of an arbitral award are rare. *See, e.g., Berklee College of Music*, 858 F.2d at 32; *S.D. Warren Co. v. United Paperworkers Int'l Union, Local 1069*, 846 F.2d 827, 828 (1st Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 555, 102 L.Ed.2d 582 (1988); *Bettencourt*, 560 F.2d at 1049. "The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of awards." *Enterprise Wheel & Car Corp.*, 363 U.S. at 596, 80 S.Ct. at 1360.

### The Arbitrator's Decision

The parties on appeal are as much at odds about what the arbitrator did decide as they are about what he should have decided. The Company insists that the arbitral award derived *solely* from the arbitrator's interpretation of Puerto Rico Law 80, 29 L.P.R.A. § 185 (Law 80), that the arbitrator found that "both the CBA and the Stipulation were contrary to the provisions of Law 80," and that the arbitrator fashioned his own remedies (reinstatement, back pay) for what he determined to be a Law 80 violation, without regard to the exclusive severance pay remedy prescribed by Law 80 itself.[5]

---

5. Law 80, Puerto Rico's Unjust Dismissal Act, provides a severance pay remedy, 29 L.P.R.A. § 185a, for employees dismissed without "good cause." *Id.* at § 185b. Law 80 obligates em-

ployers to observe certain rules of preferential retention when discharging employees, *id.* at § 185c, in case of "[f]ull, temporary or partial closing of [ ] operations," *id.* at § 185b(d),

Our examination of the arbitrator's decision discloses that the arbitrator determined also that these layoffs were effected in violation of the CBA.[6] The arbitrator considered the Company's justification for the Canóvanas layoffs. The arbitrator found that the Company had "failed to discharge the burden of [proving] ... that there actually existed pressing circumstances of an economic nature and of low-volume production which required permanent discharge of plaintiffs herein," and that, even if justified, the layoffs were not implemented in accordance with "the provisions and rights of seniority contemplated by the Act [Law 80] *and the collective bargaining agreement....*" (emphasis added). Thus, quoth the arbitrator, the "power[] recognized by the December 27, 1983 stipulation to transfer the residential breakers production line ... was implemented in violation of the applicable provisions of the law *and of the collective [bargaining] agreement* that were also pertinent to the subject matter." *Id.* at 44–45 (emphasis added).

We think it clear, therefore, that the arbitrator at least purportedly determined that the Canóvanas layoffs were effected in direct violation of Law 80 and the CBA itself, which in turn precluded activation of the remedy limitations prescribed by the Stipulation. Now we consider whether the CBA arguably supports the essence of the arbitral award. *See Misco,* 484 U.S. at 38, 108 S.Ct. at 368.

### The CBA

■ The arbitrator determined that the Canóvanas layoffs violated Article VI of the CBA, governing employee seniority rights. Article VI, section 1, states that "the seniority of each employee ... will consist of the total period of employment from the date of the most recent employment in the area of seniority in which he or she works within the bargaining unit." Section 2 details discrete "areas of seniority." Section 3 establishes a system of priorities applicable in the event of layoffs.

In cases of lay-off for lack of work, the suspension will be made on the basis of the following criteria:

A. By order of seniority and skill in the seniority area in which the employee works as established in Sections 1 and 2 of this Article, with the exception of the jobs or classifications covered in paragraph B of this Section.

Paragraph B of section 3 sets down twenty-six job classifications "in which specialized skills and training are required," and mandates that layoffs be made "in order of seniority and skill within the affected classification." Article VI, section 9, states:

The parties agree that this seniority clause shall be put into effect with the commitment from the Union representatives that all the necessary efforts shall be made to maintain the production standards as established by the Company. The Union agrees to require from a worker who does not meet the production standards or their equivalent the worker's full cooperation in fulfilling his or her task or production equivalent so as not to undermine the productivity of the Company.

Finally, section 11 B states:

B. Permanent full-time employees as of the date this Agreement is signed may,

---

"[t]echnological or reorganizational changes," *id.* at § 185b(e), or "[r]eductions in employment made necessary by a reduction in the volume of production, sales or profits," *id.* at § 185b(f). Law 80 prescribes severance pay as the exclusive remedy for its violation. *Id.* at § 185a. *See Rodriguez v. Eastern Airlines,* 816 F.2d 24, 29 (1st Cir.1987).

**6.** We find that the arbitrator initially evaluated the Stipulation against the requirements of Law 80. The arbitrator concluded that the employee layoffs resulting from the "reduction of personnel due to the relocation of the Canóvanas products lines" could not activate the remedy limitations in the Stipulation because compliance with certain substantive CBA provisions relating to economic cause for the layoffs, and the manner (preferential retention and "bumping" rights) in which the layoffs were effected, violated Law 80 and the CBA. The arbitrator found that the layoffs could not be implemented absent prior compliance with the preferential retention formula established by Law 80, *see* Arbitral Award at 26, and by Article VI of the CBA, *id.* at 27. The arbitrator further found that certain seniority rights in Article VI of the CBA were "null, void and illegal" insofar as they diminished seniority rights conferred by Law 80. *Id.* at 37.

in case of lay-off, opt to bump employees who started after the signing of this Agreement in other areas of seniority, providing they have the qualifications and abilities required to carry out the work efficiently. The substitute employee will carry out the equivalent task or production within a period of no more than five (5) working days.[7]

Addressing the Company's contention that the Stipulation was intended to take precedence over the seniority rights conferred by Article VI of the CBA, the arbitrator found that the "stipulation of December 27, 1983 could not *go over* the will outlined by the parties in Article VI," Arbitral Award at 31–32 (emphasis added), since no showing had been made that the Union agreed to waive its members' seniority rights prior to executing the Stipulation, *id.* at 32. Moreover, the arbitrator found

> clearly untenable any claim to the effect that the stipulation of December 27, 1983 had more weight than the provisions contemplated in Article VI of the collective bargaining agreement as regards the action for the permanent discharge of employees....

*Id.*

We find the arbitrator's interpretation of Article VI plausible in this regard. By entering into the Stipulation, the parties plainly recognized that a "permanent reduction of personnel due to the relocation of the Canóvanas products lines" was a "possibility" during the term of the CBA. *See* Appendix A. The Stipulation provided employees with a set of options should such a reduction eventuate. However, it is by no means inescapable, or even apparent, from the Stipulation, *see id.*, or the CBA proper, or from a fair reading of the documents together, that the parties reached an understanding that the substantive contractual rights conferred upon Union employees by Article VI of the CBA were no longer to be available in the event of such a reduction regardless of the reason for the layoffs or the manner of their implementation. No inexorable logic compelled the arbitrator to accept the Company's contention that the parties *intended* that the substantive and procedural provisions in the CBA proper—relating to employee layoffs—were no longer to be operative in the event of a workforce reduction of the type identified in the Stipulation. While the Company's interpretation is an arguable one, no less so is the Union interpretation adopted by the arbitrator—that the Stipulation conferred upon the Company no carte blanche to lay off employees without regard to the justification for the layoffs, or in disregard of employee seniority, tenure and retention rights under the CBA proper.

The arbitrator discussed at considerable length the relationship among the layoffs, the Stipulation and the CBA.

> Obviously, [the Company] lost sight ... that ... the act of discharge or permanent elimination of the positions[ ] could not by itself be carried out since the ... *collective bargaining agreement* to that same purpose prevented it from doing so.
>
> Anyway, the provisions contained in Article VI ... suggest that defendant was bound *by contract* to take into account, in the first instance, the rules of seniority, tenure and retention of employees therein contemplated, *prior to* exercising the faculty to reduce personnel recognized in the stipulation of December 27, 1983. Particularly, when the possibility was raised that seniority rights of its employees could be affected in the implementation of the authority recognized by said stipulation to discharge them permanently, because of the *alleged* necessity to transfer the production line of residential breakers to which the employees were assigned.
>
> [The Company] had the responsibility, *prior to* the exercise of such faculty, to carefully evaluate the areas of conflict

---

7. Thus, in certain circumstances an employee hired before December 27, 1983, may "bump" an employee hired after that date who is working in an "area of seniority" different from that of the first employee. *See* CBA art. VI, § 2.

For instance, an employee working in the "assembly—Sylvania" seniority area, *see id.*, § 2(6), who possesses the necessary qualifications, may displace a "junior" employee in the "assembly—Antilles" seniority area, *see id.*, § 2(7).

which could be presented in implementing the provisions contemplated in the stipulation of December 27 in connection with the legal effect of such provisions of the *collective bargaining agreement* which also have relevancy on the matter of discharges to be made on that occasion.

Arbitral Award at 31 (emphasis added). The arbitrator states:

> We are fully convinced that, as it has been suggested throughout all the developments of the discussion of the instant case, *the layoffs of March 14, 1986 were an arbitrary exercise of the powers recognized to the employer by the December 27, 1983 stipulation* to transfer the residential breakers production line, *in the simple sense that said power was implemented in violation of the applicable provisions of the law and of the collective bargaining agreement* that were also pertinent to the subject matter.

*Id.* at 44–45 (emphasis added).

We consider untenable the Company's contention that the arbitrator did not determine that the Canóvanas layoffs were effected in direct violation of the CBA itself. Three sections of Article VI plausibly were implicated by the Canóvanas layoffs: (1) section 3, relating to the order of layoff; (2) section 11, relating to "bumping rights" in the event of a layoff; and (3) section 9, the Union's commitment, in consideration of certain Company concessions relating to seniority rights, "that all necessary efforts shall be made to maintain the production standards as established by the Compa-

ny."[8] Each of these CBA provisions is susceptible to a plausible interpretation supportive of the arbitrator's decision that the Company's layoffs at Canóvanas violated particular seniority rights conferred upon Union employees under Article VI. "Whether we would find these arguments convincing were it up to us to interpret the contract is beside the point. The question is whether these arguments make the arbitrator's interpretation plausible." *Berklee College of Music*, 858 F.2d at 34.

■ The arbitrator's decision that the Canóvanas layoffs were effected in disregard of Union employees' Article VI seniority rights is not vitiated by the arbitrator's determination that certain Article VI seniority provisions are null and void on account of their incompatibility with employee seniority rights guaranteed by Law 80.[9] The arbitrator's nullification ruling did not negate that portion of Article VI, section 3B, which permits plant-wide competition for positions within particular job classifications involving "specialized skills." Likewise unaffected by the nullification ruling were the employee "bumping rights" applicable in the event of a layoff, *see id.* § 11, and Article VI, section 9, concerning consultation between the Company and the Union prior to the implementation of layoffs related to worker productivity. Thus, despite partial nullification of certain Article VI provisions in conflict with Law 80, the arbitrator determined that the Canóvanas layoffs violated intact provisions of Article VI as well.[10]

---

**8.** In its "argumentative explanation" in support of its submission, the Union charged that the Company "never made use of the mechanisms afforded by the collective bargaining agreement for ensuring the workers' productivity." While not identifying section 9 as the source of the alleged obligation, a review of the arbitral award reveals that the arbitrator considered section 9, *see* Arbitral Award at 29–30, and concluded, consistent with the Union's contention, that Article VI limited the "discretion of the management" in dismissing employees "based exclusively on the *announced* necessity of the company to transfer one of its product lines." *Id.* at 31 (emphasis added). Thus, it is arguable that the arbitral award draws its essence from a plausible interpretation of Article VI, section 9.

**9.** The arbitrator did not nullify all of Article VI, but merely those portions that (1) calculate seniority on the basis of employee tenure in a "seniority area" (art. VI, § 1) and (2) restrict an employee's right to compete for jobs to a "seniority area" (art. VI, § 3A), rather than the plant-wide job competition contemplated by Law 80, § 3. *See infra* note 10.

**10.** On June 2, 1988, the district court entered the following scheduling order:

> The parties agree that in finding in favor of the Union, the arbitrator applied the Seniority provisions of Law 80 (section 3) and declared null and void the stipulation and Article VI, dealing with seniority, of the collective bargaining agreement. The issue before the court is, therefore, whether Law 80 super-

*"Just Cause"*

■ The Union's "argumentative explanation" in support of its arbitral submission states that "the burden of showing 'just cause' for [the layoffs] rested on the employer, in accordance with the *collective bargaining agreement* and applicable law," *see* Arbitral Award at 6–7 (quoting Union's "argumentative explanation") (emphasis added), and further argues that the Company "never made use of the mechanisms afforded by the collective bargaining agreement for ensuring the workers' productivity," *id.* at 7. *See* CBA, art. VI, § 9. The arbitrator found that the Company had not shown that the Canóvanas layoffs were warranted by "pressing circumstances of an economic nature and of low-volume production." The arbitrator did not identify a particular CBA provision as the source of the requirement that there be economic justification for the layoffs.[11]

The Union argues that Article VI, section 9, supports the arbitrator's finding that

employee layoffs were to be contingent on worker productivity. Under section 9 the Union's agreement to make all necessary efforts to maintain Company production standards is made a condition precedent to the continuance in effect of the benefits of the seniority clause. The arbitrator's discussion of the Company's failure to show "pressing circumstances ... of low volume production" tracks the language in section 9 that speaks to the Union's commitment to maintain production standards as a prerequisite to the continuance in effect of the seniority clause. Accordingly, we conclude that the arbitrator supportably relied on Article VI, section 9, for the finding that the Company failed to carry its burden of proving "just cause" for the Canóvanas layoffs.[12]

*Puerto Rico Law 80*

■ The Company maintains that the arbitrator overreached the arbitral power conferred under the collective bargaining

---

sedes the terms of the collective bargaining agreement with its incorporated stipulation. Order (D.P.R. Civil No. 88–0530CC; June 2, 1988) at 2. The first sentence of the scheduling order can be read to mean that the parties were in agreement that the arbitrator invalidated all of the seniority rights in Article VI of the CBA. The record would not support such a broad reading of the scheduling order. As previously explained, *see supra* notes 7–9, only certain seniority provisions of Article VI were found to contravene Law 80. The arbitrator did not purport to nullify other seniority provisions of Article VI, not in conflict with Law 80. Nor have the parties given so broad an interpretation to the district court's scheduling order. In response to the Union's argument that the arbitrator based his determination in part on the CBA, independently of his analysis of Law 80, the Company merely contends that the arbitrator did not so determine. The Company contends instead that the arbitrator held that the layoffs violated Law 80 and that the arbitrator found that CBA provisions in conflict with Law 80 were superseded by it. We do not understand the Company to contend that the arbitrator nullified Article VI in its entirety regardless whether its provisions conflicted with Law 80. Indeed, the severability clause of the CBA, *see* Article XXV, expressly preserves all CBA provisions not inconsistent with applicable law.

11. Although the Union does not particularize section 9 as the CBA provision to which its "argumentative explanation" is addressed, there appears to be no other relevant provision. Also,

section 9 was among the Article VI provisions recited by the arbitrator in his discussion of the validity of the layoffs. *See* Arbitral Award at 29–30.

12. The arbitrator explained the rationale for the "just cause" determination.

We acknowledge the employer's right to manage its business and take those measures allowed under the law and the collective agreement to confront an economic crisis, among these, the right to a reduction of the work force.

But it happens that when the employer is forced to select that alternative, he must implement it in accordance with the rules of the game that he voluntarily agreed to with the worker thru the seniority clause and complying with its responsibility as employer to oversee compliance with the applicable legal provision that for that same purpose the legislator has adopted. Only then can we sustain the employer's actions.

We are fully convinced that, as it has been suggested throughout all the developments of the discussion of the instant case, the layoffs of March 14, 1986 were an arbitrary exercise of the powers recognized to the employer by the December 27, 1983 stipulation to transfer the residential breakers production line, in the simple sense that said power was implemented in violation of the applicable provisions of law and of the collective agreement that were also pertinent to the subject matter.

Arbitral Award at 44–45.

agreement by considering Law 80. While it is true that an arbitrator "has no general authority to invoke public laws that conflict with the bargain between the parties," *Barrentine v. Arkansas–Best Freight Sys.*, 450 U.S. 728, 744, 101 S.Ct. 1437, 1446, 67 L.Ed.2d 641 (1981) (quoting *Alexander v. Gardner–Denver*, 415 U.S. 36, 53, 94 S.Ct. 1011, 1022, 39 L.Ed.2d 147 (1974)); *see also Roadmaster Corp. v. Production & Maintenance Employees' Local 504*, 851 F.2d 886, 888–89 (7th Cir.1988) (award based on requirement of section 8(d) of NLRA exceeded scope of arbitrator's authority); *Bacardi Corp. v. Congreso de Uniones Industriales*, 692 F.2d 210, 213 (1st Cir.1982) (discussion of Puerto Rico legislative policy, improper), the parties to a collective bargaining agreement may confer such authority upon an arbitrator, either through their submissions, *see, e.g., International Bhd. of Teamsters v. Washington Employers, Inc.*, 557 F.2d 1345, 1348–50 (9th Cir.1977) (parties' submissions invited arbitrator to apply state law); *cf. Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local No. 1*, 611 F.2d 580, 584 (5th Cir.1980) (courts look to *contract and submission* to determine arbitrator's authority), or through the CBA, *see, e.g., United States Postal Serv. v. National Ass'n of Letter Carriers*, 789 F.2d 18, 19–20 (D.C.Cir.1986) (per curiam) (where CBA clause restricts management decisions in accordance with applicable law, arbitrator may decide whether employer violated statute despite CBA provision authorizing *type* of action taken by employer); *George Day Constr. Co. v. United Bhd. of Carpenters, Local 354*, 722 F.2d 1471, 1479 (9th Cir.1984) (upholding arbitrator's ruling that savings clause in CBA conferred authority to interpret CBA comportably with external law); *cf. In re Hotel Da Vinci*, 797 F.2d 33 (1st Cir.1986) (upholding arbitrator's ruling that employer's actions contravened contract and Puerto Rico Workmen's Accident Compensation Act, where CBA required arbitrator to resolve grievances in accordance with applicable labor laws and CBA).

■ There are two contractual sources from which the arbitrator derived authority to apply Law 80 to the interpretation and application of the CBA and the Stipulation. Article XII, section 5, states that "all decisions [of the arbitrator] shall be rendered according to law." Article XXV of the CBA states:

> It is the intention of the subscribing parties to this Agreement to observe all applicable laws of the Federal Government and the Commonwealth of Puerto Rico and it is agreed that should any part of this Agreement violate any law of the Federal Government or of the Commonwealth of Puerto Rico or any of their regulations, that part of the Agreement, by mutual understanding, shall be null, void and without effect, value or force of law whatsoever, without invalidating the other clauses of this Agreement, unless said invalidity annuls the applicability of any other clause.

Articles XII and XXV plainly authorize application of Law 80 to the resolution of grievances arising under the CBA and the Stipulation.[13] The arbitrator reasonably understood that these CBA provisions conferred arbitral authority, indeed, the obligation, to consider "rights that spring from the law, vis-a-vis the provisions of the [CBA as] the interpretive rule of the game that we shall apply in the instant case." Arbitral Award at 14–15. *See Trustees of*

---

13. Once it is determined that the parties empowered the arbitrator to interpret Law 80 in resolving these grievances, it is largely, though not entirely, academic whether the arbitrator's decision is founded directly on the CBA or on Law 80 as incorporated by the CBA. The exception would relate to a Law 80 violation for which Law 80 provides an exclusive remedy, i.e., severance pay. The Stipulation itself recognizes that an eligible employee would be entitled to claim the severance benefits prescribed by Law 80, after credit for any lesser severance pay received pursuant to the Stipulation. Thus, both by virtue of the terms of the contract (Stipulation) and Law 80, once an employee has been dismissed in accordance with the provisions of the CBA, the employee's sole remedy would be that prescribed in the Stipulation (i.e. severance pay, per either Law 80 or para. 4 of the Stipulation), which would preclude reinstatement or back pay.

*Boston Univ.* 746 F.2d at 927 (interpretation of contract, including scope of arbitrator's authority, is for arbitrator); *In re Hotel Da Vinci,* 797 F.2d at 34 ("agreement required the arbitrator to resolve grievances in accordance with the collective bargaining agreement ... and applicable labor laws").

The Company argues that "according to law" merely means that the arbitrator cannot rule "in violation of established principles of federal labor law." Appellee's Brief at 10–11 (quoting *Hilton Int'l Co. v. Union de Trabajadores,* 600 F.Supp. 1446, 1449 (D.P.R.1985)). However, Article XXV speaks not only of federal law, but Puerto Rico law as well. The arbitrator's interpretation of Article XXV comports with its express terms.

■ The Company contends that local law must yield to federal labor law, but the Company points to no incompatibility. Rather, the Company argues that there is inconsistency between the CBA and Law 80. In itself any such inconsistency would not warrant invalidation of the arbitral award.

> Section 301 [of the LMRA] on its face says nothing about the substance of what private parties may agree to in a labor contract. Nor is there any suggestion that Congress, in adopting § 301, wished to give substantive provisions of private agreements the force of labor law, ousting any inconsistent state regulation. Such a rule of law would delegate to unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavored. Clearly, § 301 does not grant the parties to a collective bargaining agreement the ability to contract for what is illegal under state law.

*Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 211–12, 105 S.Ct. 1904, 1911–12, 85 L.Ed.2d 206 (1985). *See also Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 755, 105 S.Ct. 2380, 2397, 85 L.Ed.2d 728 (1985) ("It would further few of the purposes of the Act [NLRA] to allow unions and employers to bargain for terms of employment that state law forbids employers to establish unilaterally.") The Company does not suggest a sufficient basis in law which would counsel against application of Law 80 in these circumstances. Instead, Law 80 seems to set the type of local "minimum employment standard" found enforceable in *Metropolitan Life, supra* at 757, 105 S.Ct. at 2398 ("When a state law establishes a minimum employment standard not inconsistent with the general legislative goals of the NLRA, it conflicts with none of the purposes of the Act.") Furthermore, the arbitrator's determination that certain provisions of the Stipulation and Article VI conflict with Law 80 does not amount to a "manifest error of law as would lead us to review the arbitrator's conclusions in this regard." *Bettencourt,* 560 F.2d at 1049. *See George Day Constr. Co.,* 722 F.2d at 1477; *American Postal Workers Union v. United States Postal Serv.,* 682 F.2d 1280, 1284 (9th Cir.1982), *cert. denied,* 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983).

■ A collective bargaining agreement may enhance, but not diminish, minimum standards prescribed by state labor law. *See Metropolitan Life Ins. Co.,* 471 U.S. at 753–57, 105 S.Ct. at 2396–98 (state statute mandating minimum mental health coverage of employees, not preempted by NLRA); *cf. Beckwith v. United Parcel Service, Inc.,* 889 F.2d 344, 346–49 (1st Cir.1989) (statute forbidding satisfaction of employer claims through payroll deductions not preempted by NLRA); *United States Equal Employment Opportunity Comm'n v. County of Calumet,* 686 F.2d 1249, 1255 n. 4 (7th Cir.1982) (noting existence of state and federal minimum standards that "may not be altered in a collective bargaining agreement"). Section 3 of Law 80 establishes a requirement on the part of employers "to retain with preference in the job those employees of greater seniority provided there are positions vacant or filled by employees of less seniority in the employment within their occupational classification which may be held by them...." 29 L.P.R.A. § 185c. Section 1 states that "[t]he years of service shall be determined on the basis of all accumulated preceding periods of work which the em-

ployee has worked for the employer prior to his discharge...." 29 L.P.R.A. § 185a. The arbitrator reasonably interpreted these provisions as establishing preferential retention (seniority) rights, *see* 29 L.P.R.A. § 185c, which "prevail over any provisions in a labor agreement that infringe the same." Arbitral Award at 24 (quoting "Guidelines for the Interpretation and Application of Law 80," Puerto Rico Department of Labor and Human Resources).[14]

### The Remedy

█ The district court vacated the arbitral award on the ground that in fashioning the remedy the arbitrator ignored paragraph 4 of the Stipulation, which *unambiguously* states that "the Company will not assume any additional obligation to the one required by Law 80." The district court held, and the Company contends, that in ignoring the plain language of paragraph 4 of the Stipulation the arbitrator manifested infidelity to the arbitral duty that "the essence" of the award derive from the parties' agreement.

Of course, if the arbitrator indeed ignored the plain language of paragraph 4 in fashioning a remedy, we would vacate the arbitral award in that respect. *See, e.g., Georgia–Pacific Corp.*, 864 F.2d at 944–46; *S.D. Warren Co.*, 845 F.2d at 8; *Hoteles Condado Beach*, 763 F.2d at 42. Similarly, if the arbitrator found no more than a violation of Law 80, an award of reinstatement and back pay would be improper. *See, e.g., Rodriguez*, 816 F.2d at 28–29; *Santoni Roig v. Iberia Lineas Aereas De Espana*, 688 F.Supp. 810, 817 (D.P.R.1988); *Rivera v. Security Nat'l Life Ins. Co.*, 6 P.R. Supreme Court Official Translations 727, 106 D.P.R. 517 (1977). Since it is established that severance pay is the *exclusive* remedy for violations of Law 80, there could be no conceivable basis for any remedy but severance pay if the Canóvanas layoffs violated only Law 80. Instead, however, the arbitrator plausibly determined that the Stipulation evinced no *agreement* between the parties that the Company was allowed to effect employee layoffs in connection with production line reductions at Canóvanas without "just cause" or without regard to the seniority, tenure and "bumping" rights conferred upon Union employees by the CBA proper. The arbitrator reasoned that the remedy limitations contained in the Stipulation were inapplicable to employees laid off in violation of the CBA.

There is no evidence of negotiations, let alone understandings, between the parties in these regards, and we can discern no language in the Stipulation which would support the conclusion that the Union either expressly or impliedly agreed to forego the substantive rights of Canóvanas employees under the CBA. The arbitrator rationally determined that the CBA's seniority, tenure and bumping provisions remained in effect notwithstanding the Stipulation, not as *remedies* supplementary to the severance remedy in the Stipulation, but as conditions precedent to contractually-valid employee layoffs at Canóvanas, as elsewhere. The arbitrator's interpretation is supported by the absence of any contention or indication that the Union and the Company ever discussed, much less agreed, prior to the execution of the Stipulation, that these substantive CBA provisions were to be superseded by the Stipulation. Having found that the Canóvanas layoffs were effected in violation of Article VI of the CBA, it was within the interpretative authority entrusted to the arbitrator by the contracting parties to decide that the remedial provisions of the Stipulation were never activated by the invalid layoffs.

---

**14.** The arbitrator's interpretation of Law 80 is not inconsistent with *Rodriguez v. Eastern Airlines*, 816 F.2d 24 (1st Cir.1987). In *Rodriguez* we reviewed a district court judgment requiring an employer to calculate employee seniority under the company-wide tenure formula of Law 80. There we held that employees were not entitled to reinstatement because (1) the employees had not been *discharged*, but merely transferred within the company, and (2) in any event, severance pay is the *exclusive* remedy for violation of seniority rights conferred by Law 80. We pointedly deferred decision as to whether the Company's seniority policy—based on job classification tenure, rather than company-wide tenure—violated Law 80, since that issue "need not be resolved until a discharged ... employee seeks severance pay under the statute." *Rodriguez*, 816 F.2d at 29 n. 8.

Unless constrained by the collective bargaining agreement, or the arbitral submissions, the arbitrator possessed broad powers to fashion an appropriate remedy.

When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations.

*Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct. at 1361. *See S.D. Warren Co.*, 845 F.2d at 8 (where "parties do not pre-negotiate remedies, the arbitrator can fashion them as part of his decisional discretion"). Nothing in the collective bargaining agreement or the submissions constrained the arbitrator's remedial powers. Once it was supportably determined that the Canóvanas layoffs violated the CBA, and that therefore the remedy limitations in the Stipulation never came into play, it was within the "decisional discretion" of the arbitrator to select reinstatement, with back pay, as the appropriate remedy. *See also In re Hotel Da Vinci*, 797 F.2d at 34–35.[15]

The essence of the arbitral award derives from the collective bargaining agreement. The present case is similar to our decision in *In re Hotel Da Vinci, supra*, where the arbitrator, having found that an employee's dismissal violated the collective bargaining agreement and the Puerto Rico Workmen's Accident Compensation Act, ordered reinstatement with back pay. We rejected the employer's argument that the remedy was contrary to the Workmen's Accident Compensation Act.

If this case had involved solely a claim of violation of the Act, we would probably agree with appellant that Ramos should not be entitled to reinstatement and pay sixteen months after the initial date of disability. However, in addition to charging a violation of the Act, the grievance filed also alleges a breach of the collective bargaining agreement. Consequently, even though the remedy at bar may not follow the Act, we are persuaded that it draws its essence from the collective bargaining agreement, thus meeting the standard that is required by federal labor law in determining whether a court should enforce the arbitration award.

*Id.* at 35–36. Likewise, had the Canóvanas layoffs violated Law 80 only, reinstatement with back pay would have been precluded by the exclusivity of the severance pay remedy under Law 80. As in *Da Vinci*, however, the arbitrator supportably found a violation of the CBA as well. Since the layoffs violated the CBA the Arbitrator reasonably concluded that the remedy limitations in the Stipulation did not apply and that reinstatement, with back pay, was an appropriate remedy.

*Employees on Temporary Layoff*

The arbitral award explicitly encompasses not only the Canóvanas employees laid off on March 14, 1986, but "those employees who were in a 'lay-off' situation on [March 14, 1986]." The arbitrator stated:

We additionally resolve that all employees of the residential breakers production line that were temporarily laid-off prior to March 14, 1986 have the same right to question the permanent lay-off decreed in this case on the same basis of contention raised by those employees laid-off on that same date; as well as their rights to be granted the same remedy that we will indicate below.

The deferential standard of review in labor arbitration cases precludes judicial review on the merits only insofar as the award draws its essence from the collective bargaining agreement. *See Misco*, 484 U.S. at 38, 108 S.Ct. at 368; *Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80

15. "This is not a case of [an arbitrator] basing a decision only on ... public policy." *Stop & Shop Cos.* 776 F.2d at 22. Since the arbitrator was "arguably construing the agreement," *Bayamon Can Co.*, 843 F.2d at 67, and "the arbitrator's interpretation [is] plausible," *Berklee Col-lege of Music*, 858 F.2d at 34, his determination is not subject to review, *see Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct. at 1361, even though his discussion of Puerto Rico Law 80 may have been "irrelevant and improper," *Bacardi Corp.*, 692 F.2d at 213.

S.Ct. at 1361. The rationale for the above-quoted portion of the award is not stated, nor can we discern one from the record, except perhaps in its most literal interpretation—that employees on temporary lay-off before March 14 "have the same *right* [as employees laid off on March 14] *to question*" (emphasis added) the invalid elimination of the Canóvanas positions. We do not understand the Union to suggest that the *temporary lay-off* of these employees before March 14 violated the collective bargaining agreement, only that the permanent elimination of all Canóvanas "residential breakers production line" jobs, without just cause, foreclosed any right of recall these employees may have had. Absent a finding that these employees were temporarily laid off in violation of the collective bargaining agreement, or that the contract conferred a right of recall under certain conditions, we are unable to conclude that this part of the arbitral award derives its essence from the collective bargaining agreement. *See Misco*, 484 U.S. at 38, 108 S.Ct. at 368. Although "[a]rbitrators have no obligation to the court to give their reasons for an award," *Enterprise Wheel & Car Corp.*, 363 U.S. at 598, 80 S.Ct. at 1361, unless we can discern in some manner from the record that an award draws its essence from the collective bargaining agreement, we can neither affirm nor enforce it.

### III

### CONCLUSION

Accordingly, we remand to the district court to determine whether further arbitration proceedings are required to ascertain the nature, terms, and source of any right to recall, and of any right to reinstatement and back pay, on the part of the Canóvanas employees placed on temporary layoff status before March 14.

*The judgment is vacated. The case is remanded to the district court for the entry of judgment affirming the arbitral award to Canóvanas residential breakers production line employees laid off in violation of the collective bargaining agreement on March 14, 1986. On remand the district court shall order such further arbitration proceedings as are necessary to enable the district court, consistent with this opinion, to affirm and enforce, or to refuse to affirm, the arbitral award to Canóvanas residential breakers production line employees placed on temporary lay-off status before March 14.*

VACATED and REMANDED.

### APPENDIX A

### AGREEMENT

In recognition of the possibility of a permanent reduction of personnel due to the relocation of the Canóvanas products lines to the Plant in Comerío, during the term of the Collective Bargaining Agreement in effect, the Union and the Corporation agree as follows:

1. The employees covered under the bargaining unit of Canóvanas whose employments are directly and permanently eliminated as a result of a relocation of the products lines will have the right to select one of the following alternatives:

a) Receive a compensation at the moment of the permanent relocation computed as follows:

Eight (8) hours of pay for each complete year of service up to ten (10) years of service and forty (40) hours of pay for each complete year of service after ten (10) years of service.

b) Remain on a reemployment list under the Canóvanas bargaining unit for a period of twelve (12) months. The employee may decide to receive the compensation above indicated in subparagraph (a) at any time within the twelve (12) month period indicated.

c) Accept a transfer to the place where the production line is relocated at the time the change is carried out.

2. It is also agreed that the decision of any of the affected employees who choose any of the above enumerated alternatives, should be done in writing and said selection is final and not subject to change.

3. Any employee who chooses the alternatives a) and b), above indicated, shall be released from his employment after receiving the compensation herein indicated and will not have the right to be re-employed. If for any reason an employee who chooses

this compensation is re-employed on any future date after the period of twelve (12) months, said employee shall be considered as a new employee without crediting the previous length of service and with the salary of a new employee.

4. If it is determined that an employee who chooses this compensation under this agreement is eligible to receive the benefits included under the Dismissal Law (Law 80), any payment received by said employee under the terms of this agreement will be credited to the required pay under the Dismissal Law and the Company will not assume any additional obligation to the one required by Law 80.

5. This agreement is final and is not subject to future claims different to (sic) what is herein established in connection with the transfer of the Canóvanas products line to the Plant in Comerío.