**BULL HN INFORMATION SYSTEMS INC., Plaintiff,**

v.

**Charles J. HUTSON, Defendant.**

**No. CIV. A. 96–10523–RCL.**

United States District Court, D. Massachusetts.

Nov. 10, 1997.

David B. Chaffin, Robert T. Nagle, Hare & Chaffin, Boston, MA, for Bull HN Information Systems Inc.

David J. Burgess, Dwyer & Collora, Boston, MA, Nelson G. Harris, Raleigh, NC, for Charles J. Hutson.

Robert C. Paschal, Young, Moore, Henderson & Alvis, Raleigh, NC, for Continental Cas. Co.

Stephen A. Dunn, Emanuel & Emanuel, Raleigh, NC, James J. Ciapciak, Campbell, Campbell & Edwards, Boston, MA, for Metropolitan Life Ins. Co.

Robert T. Nagle, Hare & Chaffin, Boston, MA, for Bull HN Retirement Administration Committee.

*OPINION AND ORDER ON APPLICATION TO VACATE ARBITRATION AWARD PURSUANT TO 9 U.S.C. § 10 AND FOR STAY OF FURTHER ARBITRATION PROCEEDINGS AND COMPLAINT FOR DECLARATORY JUDGMENT (# 1) AND APPLICATION TO CONFIRM ARBITRATION AWARD AND MOTION TO COMPEL ARBITRATION (# 5)*

COLLINGS, United States Magistrate Judge.

### I. Introduction

This civil action arises out of claims asserted by the defendant Charles J. Hutson

("Hutson") against the plaintiff Bull HN Information Systems Inc. ("Bull HN"). Hutson, a former sales representative for the plaintiff, filed a demand for arbitration in 1995 pursuant to the applicable arbitration provision of a 1990 Sales Compensation Plan ("the Plan") covering Bull HN sales representatives. The defendant contended that Bull HN had not paid him commissions on a particular sale and, in addition, he sought a recalculation of his benefit base, other allegedly unpaid benefits, and payment of additional benefits resulting from the recalculated salary and benefit base. Not only did Bull HN deny that Hutson was entitled to the commissions on the merits, the plaintiff asserted that the claims were time-barred under the limitations provision of the Plan.

In the Phase I Award, the arbitrator determined that the Plan "by its own terms" was not a contract, that Hutson's claims were timely under "any statute of limitation applicable in this matter", and that the defendant was entitled to commissions and bonuses in the amount of $52,605.57 plus interest. Displeased with these determinations, Bull HN instituted the instant action to vacate the Phase I Award, to stay arbitration of Hutson's remaining claims and for declaratory judgment. The defendant countered by filing an application to confirm the arbitration award and to compel arbitration of his outstanding claims.

With the parties' consent, this case has been referred and reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c). Both Bull HN and Hutson had filed motions for summary judgment, but they were denied in an Order (#41) dated September 25, 1997. Relying generally on the recent First Circuit decision in *Recupero v. New England Telephone and Telegraph,* 118 F.3d 820, 834 (1 Cir.1997), the Court concluded that the best way to proceed was to decide the applications on the merits based on the various memoranda filed with respect to the summary judgment motions. A hearing on the merits was held on October 23, 1997, and, at this juncture, the parties' cross-applications are in a posture for decision.

## II. The Facts

The historical facts underlying the controversy presented to the arbitrator need only be recited summarily in order to set the stage for the issues now at hand.

Hutson was working as a sales representative for Bull HN, a computer company, in 1990 when he claims he was assigned the North Carolina Agricultural Extension account. Thereafter the defendant asserted that he was due commissions for work that he had done on that account. On October 22, 1991, and again in December of that year, Hutson's wife on his behalf wrote letters to Bull HN wherein she contended that a commission was being withheld and requested arbitration of the dispute under the terms of the Plan. On March 6, 1995, Hutson served a Demand For Arbitration on Bull HN with copies being filed with the American Arbitration Association.

By way of introduction, the Demand read as follows:

The named Claimant [Hutson], a party to an arbitration agreement contained in the Sales Compensation Plan for Individual Contributors, providing for arbitration under the Commercial Arbitration Rules, demands arbitration thereunder.

The arbitration clause contained in the Plan provides:

All disputes which involve claims for $3,000 or more, and which arise out of the participant's course of employment or out of the termination thereof, including but not limited to claims for wrongful termination, infliction of emotional distress and defamation, whether or not such claims are based exclusively on the terms of this Plan, shall be submitted to arbitration in Boston, Massachusetts if the parties are unable to resolve their dispute after good faith efforts. The Commercial Arbitration Rules of the American Arbitration Association shall apply to all aspects of the arbitration between the parties. The parties agree that after arbitration has been initiated, all other civil actions between the parties shall be stayed until the arbitration proceeding is concluded.

In deciding disputes, the arbitrators shall honor the terms and conditions of this Plan and construe said Plan in accordance with the laws of the Commonwealth of Massachusetts. The arbitration decision shall be binding on the parties and be honored by them without resort to any further court proceedings.

Record of the Arbitration Proceeding, Volume I, # 11, Exh. 2. After delineating the particulars of his claims, Hutson's claim for relief was drafted as follows:

Pursuant to the terms of the Sales Compensation Plan for Individual Contributors, and pursuant to the North Carolina Wage and Hour Act, the Respondent is indebted to Claimant in a principal amount in excess of $130,000 for commissions, interest, reasonable attorney's fees, and the costs of arbitration. Claimant seeks an award requiring Bull HN to recalculate his salary and benefits and benefits base and to properly thereafter apply said terms to calculate Claimant's benefits; and to rescind the improper changes in Claimant's benefits. Claimant also seeks a declaratory ruling precluding Bull HN from altering his benefits except in accordance with law; and an award of liquidated damages for unpaid wages.

Record of the Arbitration Proceeding, Volume I, # 11, Exh. 2. Appended to the Demand was a copy of four provisions of the Plan, to wit, the clause entitled "Arbitration of Certain Disputes" as quoted at length hereinabove; the clause entitled "Controlling Law" which provides that the law of Massachusetts is to govern the Plan; the clause entitled "Limitation of Actions" which provides that claims under the Plan must be brought within "two (2) years after the claim or cause of action has arisen"; and finally the clause entitled "Waivers" which provides that any waiver of any provision of the Plan must be in writing.

In response to the Demand, Bull HN objected to the North Carolina locale on the grounds that "[t]he arbitration clause of the Sales Compensation Plan ("the Plan"), which is accurately quoted in the Demand, states that the claims 'shall be submitted to arbitration in Boston, Massachusetts ...'" (# 11,

Exh. 3) After the numbered paragraphs of the Demand were answered, three defenses were interposed:

1. The claims are barred by the two year limitation period contained in the Plan. Page 41, Paragraph F., "Limitation of Actions".... The Claimant's alleged lack of competence, which he originally claimed began in October 1990 but now moves back to August 1990, did not exist in any case at the time the sale was made in this case, and does not bar the running of the limitations period.

2. The Plan mandates the application of Massachusetts law, therefore the claims under North Carolina law are improper.

3. The plaintiff's claims for employee benefits are governed by the Employee Retirement Income and Security Act ("ERISA") and as such can only be heard in state or federal court. Specifically, the claims procedure for such employee benefits plans do not provide for arbitration of disputes under such Plans and therefore this tribunal lacks jurisdiction over these claims.

Record of the Arbitration Proceeding, Volume I, # 11, Exh. 3. It is clear from the Demand and Bull HN's Answer to it that there was never any dispute between the parties that the provisions of the Plan were controlling, and that any compensation to which Hutson was entitled was to be paid in accordance with the Plan.

On or about July 5, 1995, Bull HN filed an opposition to Hutson's demand for arbitration of the ERISA claims, expounding on its position that ERISA claims are not arbitrable. (# 11, Exh. 4) The following day Hutson filed a memorandum in support of his demand for arbitration. (# 11, Exh. 5) On or about August 14, 1995, the arbitrator issued a ruling with respect to the limitation of issues, finding first that caselaw supports the arbitrability of ERISA-related claims pursuant to a valid agreement to arbitrate, and second that the arbitration clause in the Plan was

sufficiently broad to encompass ERISA-related claims that may be supported by Claimant's factual showing at the hearing in this matter, but only if such claims are

directly related to the salary, commissions, or other compensation structures established under the Sales Compensation Plan.

Record of the Arbitration Proceeding, Volume I, # 11, Exh. 6. The arbitration hearing began on November 20, 1995 at Boston, Massachusetts; on the afternoon of the second day, the arbitrator began the session by making the following statement:

Before we go on with further cross-examination, the parties had made a request of the arbitrator and the arbitrator, having reviewed the rules, has determined that he can exceed (sic) to that request; that is, to make an interim or, possibly, final decision on two specific matters in this case.

Those being, number one, was the claimant barred by the sales compensation plan from filing this claim and, number two, if he was not barred, was any compensation and/or commission due on the 1990 sale of Bull equipment to North Carolina Agricultural Extension.

Record of the Arbitration Proceeding, Volume II, # 12, Exh. 14 at 335.

The parties stipulated that the issues as stated by the arbitrator were correct and, thereafter, briefs and reply briefs were filed with respect to those issues. (Id. at 335–36; # 11, Exh. 8–12)

On February 12, 1996, the arbitrator issued the "Phase I Award of the Arbitrator". (# 11, Exh. 1) The first section of this Phase I Award reads in its entirety as follows:

1. **Limitations of Action:**

a. Because the Bull HN Compensation Plan (the "SCP"—Claimant's Exhibit 3) is, by its own terms in Section VI.A, not a contract, Section VI.F ("Limitation of Actions") does not bind the Claimant in this matter. As a result, the parties are deemed to have submitted this matter to arbitration under Rule 7 of the *AAA Commercial Arbitration Rules.*

b. After a review of the evidence, the Arbitrator finds that the Claimant, by his wife, twice filed a timely demand for arbitration to which Respondent failed

to respond. Claimant, therefore, has met any statute of limitation applicable in this matter.

Record of the Arbitration Proceeding, Volume I, # 11, Exh. 1 (emphasis in original). The sections of the Plan referenced by the arbitrator with respect to limitations of action in section 1(a) provide:

### POLICIES AND PRACTICES

### SECTION VI

### INTERPRETATION AND DISPUTE RESOLUTION

A. *PLAN PARTICIPATION AND EMPLOYMENT AT WILL*

All participants in this Plan are employed at the will of the Company. The Company reserves the unilateral right to terminate a participant's employment and/or participation in the Plan at any time, with or without cause and without prior notice. Nothing in this Plan shall be construed to create or imply the guarantee or the creation of a contract of employment for any specified period of time between the Company or any of its divisions and any participant.

\* \* \* \* \* \*

F. *LIMITATION OF ACTIONS*

Neither party may demand arbitration or institute any lawsuit in any form arising out of this Plan, or arising in any way out of the employment relationship between the parties, more than two (2) years after the claim or cause of action has arisen.

Record of the Arbitration Proceeding, Volume IV, # 14, Exh. 16. Having concluded that the claims were not time-barred, the arbitrator then found that Hutson was not an IB (incentive bonus) participant under the Plan, and thus not entitled to any IB compensation. (# 11, Exh. 1) However, under the terms of the Plan, the arbitrator determined that Hutson was owed commissions and bonuses "in the amount of $52,605.57 plus 10% interest from January 1, 1991 until payment of this Phase 1 Award in full."[1] (# 11, Exh. 1) (emphasis in original)

---

**1.** The arbitrator additionally found that Hutson

was due a Pacesetter Bonus, but that further

Bull HN's motion for reconsideration of the Phase I Award was denied by the arbitrator, and hence, the instant lawsuit was commenced by Bull HN to vacate the arbitration award, while Hutson seeks to have it affirmed.

### III. Discussion

■ Pursuant to the Federal Arbitration Act, specifically 9 U.S.C. § 10(a)(4), the district court may vacate an arbitration award "[w]here the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." Before reaching the substantive issues, given that the award being appealed is admittedly only a "Phase I Award" and that further issues remain to be decided by the arbitrator, the question arose as to whether the award is "final and definite." This is a significant threshold inquiry for, as the First Circuit had occasion to note in June of this year, in a case such as this "[i]t is essential for the district court's jurisdiction that the arbitrator's decision was final, not interlocutory." *El Mundo Broadcasting Corporation v. United Steelworkers of America, AFL–CIO*, 116 F.3d 7, 9 (1 Cir.1997).

■ It is often stated that

The general rule is that in order for an award to be final and definite, it must resolve all issues submitted to arbitration, and determine each issue fully so that no further litigation is necessary to finalize the obligations of the parties under the award. *Puerto Rico Maritime Shipping v. Star Lines, Ltd.*, 454 F.Supp. 368, 372 (S.D.N.Y.1978).

information was needed to do the necessary calculations. Consequently, the amount of that bonus "will be included as a part of the final decision in this matter." (# 5, Exh. 7)

**2.** Recognition of this exception was not without dissent:

A similar rule of finality applies to arbitration proceedings under the Federal Arbitration Act, 9 U.S.C. §§ 9 and 10(d). Lack of finality is a statutory ground for vacating an arbitration award and for refusing confirmation; section 10(d) provides for vacation of an award

*Dighello v. Busconi*, 673 F.Supp. 85, 90 (D.Conn.; 1987). Plainly, if this rule were to be applied the present case would have to be dismissed since the arbitrator has not yet decided all of the issues put to him. However, the general rule is not without exception, as noted by the Second Circuit:

More closely on point are the cases which endorse the proposition that an award which finally and definitely disposes of a separate independent claim may be confirmed although it does not dispose of all claims that were submitted to arbitration. *See, e.g., Island Creek Coal Sales Co. v. City of Gainesville*, 729 F.2d 1046, 1049 (6th Cir.1984); *Moyer v. Van–Dye–Way Corp.*, 126 F.2d 339, 341 (3d Cir.1942); *Sperry International Trade, Inc. v. Government of Israel*, 532 F.Supp. [901], 909 [(S.D.N.Y.), aff'd,* 689 F.2d 301 (2d Cir. 1982) ]; *Eurolines Shipping Co., S.A. v. Metal Transport Corp.*, 491 F.Supp. 590, 592 (S.D.N.Y.1980); *Puerto Rico Maritime Shipping Authority v. Star Lines Ltd.*, 454 F.Supp. 368, 372 (S.D.N.Y.) Because the award in the instant case finally and conclusively disposed of a separate and independent claim and was subject to neither abatement nor set-off, the district court did not err in confirming it.

*Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 283 (2 Cir.1986).[2]

■ Following this rationale, the Court is empowered either to confirm or vacate the Phase I Award because it deals with discrete and distinct claims, to wit, whether the claims were barred by the Plan and, if not, the extent of Hutson's right to commissions and/or bonuses relating to the North Carolina Agricultural Extension account. These claims are separable from, and independent

that is not "mutual, final, and definite ..." ... Final and complete resolution of the issues submitted to arbitration has usually been considered a prerequisite to confirmation by the district court. The exception the majority now engrafts onto this requirement of finality is not authorized by Congress and gives the district court authority to confirm an award that it would not otherwise have. This exception for separate and independent claims creates, in effect, an arbitration analogue to Rule 54(b). *Metallgesellschaft A.G.*, 790 F.2d at 284 (Feinberg, Chief Judge, dissenting) (footnote omitted).

of, the remaining ERISA claims, although the benefits claims themselves may be impacted by their resolution. In short, since the Phase I Award conclusively disposed of the limitations issue and the compensation claim, the Court has jurisdiction to decide the merits of the applications.[3]

■ That having been said, however, the Phase I Award clearly anticipates further proceedings with respect to the ERISA-based claims. The arbitrator to date has decided only that the claims, if supported by Hutson's factual showing, are arbitrable under the arbitration clause of the Plan albeit "only if such claims are directly related to the salary, commissions, or other compensation structures established under the Sales Compensation Plan." (Record of Arbitration Proceeding, Volume I, # 11, Exh. 6)˙ How this decision will be applied or precisely what claims will be encompassed is unclear at this point. Indeed it is conceivable that circumstances may exist such that no ERISA-based claims will be found to be arbitrable. In any event with no final decision yet having been made by the arbitrator, it would be premature for any judicial intervention; the Court has no jurisdiction to take any action at this time regarding the ERISA-based claims that remain extant.[4]

■ In seeking to vacate the Phase I Award, Bull HN advances a two-pronged attack. First, under § 10(a)(4) of the Act, the plaintiff asserts that the award was made in excess of the arbitrator's authority. Beyond the statute, additionally or alternatively, it is argued that the award was made in manifest disregard of the law. With respect to this latter theory,

Courts do, however, retain a very limited power to review arbitration awards outside of section 10. "The considerable deference due an arbitrator's decision 'does not grant carte blanche approval to any decision that the arbitrator might make . . .'" *Challenger Caribbean Corp. v. Union General de Trabajadores*, 903 F.2d [857,] 858, 861 (1st Cir.1990)(quoting *International Bhd. of Firemen, Local 261 v. Great N. Paper Co.*, 765 F.2d 295, 296 (1st Cir.1985)). Nevertheless, non-reviewability remains the general rule—and exceptions are few and far between. *See Bettencourt v. Boston Edison Co.*, 560 F.2d 1045, 1049 (1st Cir.1977). In the main, a successful challenge to an arbitration award, apart from section 10, depends upon the challenger's ability to show that the award is

"(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a critical assumption that is concededly a non-fact." *Local 1445; United Food and Commercial Workers v. Stop & Shop Cos.*, 776 F.2d 19, 21 (1st Cir.1985); *Bettencourt*, 560 F.2d at 1050.

*Advest, Inc. v. McCarthy*, 914 F.2d 6, 8–9 (1 Cir.1990). It is best to start at the beginning with the basic principles.

As did the First Circuit, "[w]e start with the bedrock: 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *McCarthy v. Azure*, 22 F.3d 351, 354 (1 Cir.1994) quoting *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986), quoting *United Steelworkers v. Warrior & Gulf Navig. Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960). Further,

the arbitrator's award settling a dispute with respect to the interpretation or application of a labor contract must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as the arbitrator is even arguably construing or applying the contract and acting within the

---

3. In accordance with the Court's Order that the parties brief this issue prior to the scheduled hearing, Hutson and Bull NH duly filed their respective memoranda (# # 42, 43) with both agreeing that the Phase I Award was "final" and thus subject to immediate review.

4. Although Bull HN argues that action should be taken on its declaratory judgment claim with respect to the arbitrability of the ERISA claims, it candidly admits that it has found no cases to support or reject this approach. (*See* # 42 at 11)

scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision. *United Paperworkers International Union, AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 370–71, 98 L.Ed.2d 286 (1987).

■■■■ In more summary fashion, "[i] t is well-settled that judicial review of an arbitration award is narrowly limited." *Barbier v. Shearson Lehman Hutton Inc.,* 948 F.2d 117, 120 (2 Cir.1991). Even within these parameters

judicial deference to arbitration, however, does not grant carte blanche approval to any decision an arbitrator might make. The arbitrator's authority is circumscribed by the arbitration agreement, and he can bind the parties only on issues that they have agreed to submit to him. Whether an arbitrator has exceeded these bounds is an issue for judicial resolution. For that reason, an arbitrator who derives his power solely from the contract cannot hold that charter to be legally ineffective.

*Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, Local No.1,* 611 F.2d 580, 582 (5 Cir., 1980).

■■■■ In the instant case a review of the Demand For Arbitration and Bull HN's response thereto reveals unequivocally that the parties' dispute came to arbitration pursuant to the provisions of the Plan. Neither Hutson nor Bull HN has ever questioned the fact that the Plan was a contract, and that its provisions were applicable and binding upon them. The Plan was the source from whence the arbitrator drew his power to adjudicate the dispute between the parties.

■■■■ The validity of the contract was not an issue presented to the arbitrator for decision; rather, the two issues to be decided in Phase I were as stated on the record the second day of the arbitration hearing and as stipulated by the parties. In determining that the Plan was not a contract, the arbitrator overreached his authority: "The

arbitrator's authority is circumscribed by the arbitration agreement, and he can bind the parties only on issues that they have agreed to submit to him." *Piggly Wiggly,* 611 F.2d at 583; *McCarthy,* 22 F.3d at 354. Moreover, that very conclusion, i.e., the Plan was not a contract, is grounds enough to vacate the award for "an arbitrator may not invalidate the very agreement from which he derives his power." *Executone Information Systems, Inc. v. Davis,* 26 F.3d 1314, 1325 (5 Cir.1994) (citation omitted); *Piggly Wiggly,* 611 F.2d at 582 [5].

It follows that the same must be said with respect to the arbitrator's conclusion that the limitations provision of the Plan, Section VI.F, was not binding upon Hutson. The Supreme Court has stated that "[t] he arbitrator may not ignore that plain language of the contract." *Misco,* 484 U.S. at 38, 108 S.Ct. at 370–71; *Wheelabrator Envirotech Operating Services Incorporated v. Massachusetts Laborers District Council Local 1144,* 88 F.3d 40, 44 (1 Cir.1996). Indeed quite recently the First Circuit affirmed a grant of summary judgment by the district court vacating an arbitration award because "the arbitrator read the time provisions out of the contract, ignoring its 'essence' ". *El Mundo,* 116 F.3d at 10. In this instance, the Plan provides that no claim for arbitration may be advanced "more than two years after the claim or cause of action has arisen." This provision, not "any statute of limitation", is what must be interpreted and applied by the arbitrator.

Moreover, Bull HN agrees that the letters drafted by Hutson's wife were sent within the two year period set forth in the Plan. If these letters were sufficient to constitute a demand under the Commercial Arbitration Rules which are made applicable under the arbitration provision in the Plan, it is bedeviling why the arbitrator would reach beyond the terms of the Plan to "any statute of limitations" when the "demand" would have been timely under the Plan provisions.

**5.** The arbitrator's conclusion that "the Bull HN Compensation Plan ... is, by its own terms, not a contract" is undoubtedly one "based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made

such a ruling." The language in Section VI.A of the Plan merely provides that the Plan is not to be construed to be a contract for employment, and that participants in the Plan are employees at will.

Further, the arbitrator's conclusion that the limitation of actions provision was not binding upon Hutson and, consequently, that the parties were "deemed to have submitted this matter to arbitration under Rule 7 of the *AAA Commercial Arbitration Rules*" quite simply is in blatant disregard of both the Plan and the record. Rule 7 addresses initiation of arbitration under a submission by the parties. (Record of the Arbitration Proceeding, Volume I, # 11, Exh. 7) It is undisputed that this did not occur in this case. Indeed, at the hearing on the merits of the applications, counsel for Bull HN and Hutson agreed that the matter had been submitted for arbitration pursuant to Rule 6 of the Commercial Arbitration Rules which provides in relevant part:

> 6. Initiation under an Arbitration Provision in a Contract Arbitration under an arbitration provision in a contract shall be initiated in the following manner:
>
>> (a) The initiating party (hereinafter claimant) shall, within the time period, if any, specified in the contract(s), give written notice to the other party (hereinafter respondent) of its intention to arbitrate (demand), which notice shall contain a statement setting forth the nature of the dispute, the amount involved, if any, the remedy sought, and the hearing locale requested, and
>>
>> (b) shall file at any regional office of the AAA three copies of the notice and three copies of the arbitration provisions of the contract, together with the appropriate filing fee as provided in the scheduled on page 21.

Record of the Arbitration Proceeding, Volume I, Exh. 7. Because the arbitrator deemed the cause to have been submitted to arbitration pursuant to Rule 7, from all that appears, he never considered whether a timely, i.e., within the two years provided by the contract, demand for arbitration as defined in Rule 6 was ever effected. Of course, this was the first issue that the arbitrator was to have decided.

In sum, by the terms of his own decision it quite simply cannot be said that "the arbitrator [was] even arguably construing or applying the contract and acting within the scope of his authority." *Misco,* 484 U.S. at 38, 108 S.Ct. at 370–71; *Wheelabrator,* 88 F.3d at 44. Rather, from all that appears the arbitrator was applying "his own notions of industrial justice." *Id.* These circumstances fall within the "extremely narrow exception" when the arbitrator exceeded his authority that mandate vacating the arbitration award. *El Mundo,* 116 F.3d at 10.

### IV.  *Conclusion*

For the reasons stated, it is ORDERED that the Application To Vacate Arbitration Award Pursuant To 9 U.S.C. § 10 And For A Stay Of Further Arbitration Proceedings And Complaint For Declaratory Judgment (# 1) be, and the same hereby is, ALLOWED to the extent that the arbitrator's Phase I award is VACATED and the matter remanded to the Arbitrator for further proceedings consistent with the within Opinion. It is FURTHER ORDERED that the Application to Vacate, Etc. be, and the same hereby is, otherwise DENIED. It is FURTHER ORDERED that the complaint for declaratory judgment be, and the same hereby is, DISMISSED. It is FURTHER ORDERED that the Application To Confirm Arbitration Award And Motion To Compel Arbitration (# 5) be, and the same hereby is, ALLOWED to the extent that further arbitration is compelled. It is FURTHER ORDERED that the Application to Confirm, Etc. be, and the same hereby is, otherwise DENIED. Judgment shall enter accordingly.