**BULL HN INFORMATION SYSTEMS INC., Plaintiff,**

v.

**Charles J. HUTSON, Defendant.**

**Civil Action No. 98–10998–RBC.**

United States District Court,
D. Massachusetts.

Sept. 17, 1999.

David B. Chaffin, Robert T. Nagle, Hare & Chaffin, Boston, MA, for plaintiff.

Nelson G. Harris, Brooks, Stevens & Pope, P.A. Cary, NC, Michael J. Liston, Carr & Liston, Boston, MA, for defendant.

## *OPINION AND ORDER ON AMENDED APPLICATION AND MOTION TO VACATE MODIFIED ARBITRATION AWARD (# 31) AND MOTION OF CHARLES J. HUTSON TO CONFIRM MODIFIED ARBITRATION AWARD (# 35)*

COLLINGS, Chief United States Magistrate Judge.

### *I. Introduction*

Following an arbitrator's modification of an arbitration award on remand from a judgment vacating the previous award,[1] the plaintiff Bull HN Information Systems Inc. (hereinafter "Bull HN") filed an application and motion to vacate that modified award.[2] On July 24, 1998, defendant Charles Hutson's (hereinafter "Hutson") motion to dismiss the complaint for lack of subject matter jurisdiction was granted. *See Bull HN Information Systems Inc. v. Hutson,* 1998 WL 426047 (D.Mass.). Approximately two weeks thereafter Bull HN filed a Motion for Leave to Amend or For Reconsideration (# 17) which was ultimately allowed on January 6, 1999, in order to permit amendment of the defective allegations regarding the jurisdictional amount in controversy. *See Bull HN Information Systems Inc. v. Hutson,* 184 F.R.D. 19 (D.Mass., 1999).

In due course an Amended Application and Motion to Vacate Modified Arbitration Award (# 31) (hereinafter "the Amended Application") was submitted wherein Bull HN requests as relief either vacatur of the Modified Award with no remand due to the untimeliness of Hutson's demand for arbitration or vacatur of the Modified Award with remand to the arbitrator with instructions to answer questions regarding the timeliness of Hutson's demand for arbitration.[3] In support of its position that vacatur is warranted, Bull HN argues that "[t]he modified award is every bit as fatally flawed as its predecessor [in that] [t]he arbitrator exceeded his authority again, manifestly disregarded the law again, and

---

1. *See Bull HN Information Systems Inc. v. Hutson,* 983 F.Supp. 284 (D.Mass., 1997).

2. This is the second judicial proceeding with respect to this arbitration award. After the arbitrator issued a modified award post vacatur and remand, Bull HN sought to vacate the Modified Phase 1 award via a motion in the original case, Civil Action No. 96–10523–RBC. At that juncture, however, the Court had no jurisdiction to act on the plaintiff's motion, *see Bull HN Information Systems, Inc. v. Hutson,* 5 F.Supp.2d 68 (D.Mass., 1998), a conclusion which precipitated the filing of the instant action.

3. As the alternative course of action, Bull HN seeks remand to the arbitrator for inquiry limited to the following questions:

    1. Did Mr. Hutson provide Bull HN with a writing before late 1992?
    2. Did *that writing* notify Bull HN that Mr. Hutson intended to arbitrate?
    3. Did *that writing* set forth the nature of the claim that Mr. Hutson intended to arbitrate?
    4. Did *that writing* specify the amount involved in the dispute?
    5. Did *that writing* specify the remedy sought?

again applied his own notions of industrial justice." (Memorandum in Support of Amended Application and Motion to Vacate Modified Arbitration Award # 32 at 2) Moreover, it is further asserted that the arbitrator failed to heed what Bull HN views as instructions to be followed on remand:

> ▆ In this instance, the Plan provides that no claim for arbitration may be advanced "more than two years after the claim or cause of action has arisen." This provision, not "any statute of limitation," is what must be interpreted and applied by the arbitrator.
>
> \*    \*    \*    \*    \*    \*
>
> [And 2.] Because the arbitrator deemed the cause to have been submitted to arbitration pursuant to Rule 7 [of the AAA Commercial Arbitration Rules], from all that appears, he never considered whether a timely, i.e., within the two years provided by the contract, demand for arbitration as defined in Rule 6 was ever effected. Of course, this was the first issue that the arbitrator was to have decided.

*Bull HN Information Systems Inc. v. Hutson*, 983 F.Supp. 284, 291–2 (D.Mass., 1997).

Hutson opposes the Amended Application and concomitantly seeks confirmation of the modified arbitration award. (Motion of Defendant Charles J. Hutson to Confirm Modified Arbitration Award # 35) With the parties' consent this case has been referred and reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c).

## II.    The Facts

The relevant facts were detailed at length in the prior case and therefore now need only be briefly recapped. *See Bull HN*, 983 F.Supp. at 286–9. In 1990 Hutson was employed as a sales representative for Bull HN. Under the provisions of the then applicable Sales Compensation Plan (hereinafter "the Plan"), Hutson claims he was entitled to commissions from sales generated on the North Carolina Agricultural Extension account to which he was assigned. Indeed, in 1990 the "defendant asserted that he was due commissions for work that he had done on that account." *See Bull HN*, 983 F.Supp. at 286. Thereafter in October and December of 1991, Hutson's wife wrote two letters to Bull HN claiming that commissions owed to her husband had not been paid and requesting arbitration as set forth in the Plan to settle this grievance. *See id.* Then on March 6, 1995, a Demand For Arbitration was served by Hutson upon Bull HN and copies were also filed with the American Arbitration Association. *See id.* It was stated in the Demand For Arbitration that "[t]he named Claimant, [Hutson] a party to an arbitration agreement contained in the Sales Compensation Plan for Individual Contributors, providing for arbitration under the Commercial Arbitration Rules, demands arbitration thereunder." (# 31, Exh. B)

Hutson was "employed at the will of the Company"; the Plan did not create a "contract of employment for any specified period of time." (# 31, Exh. A) The Plan provided that:

> All disputes which involve claims for $3,000 or more, and which arise out of the participant's course of employment or out of the termination thereof, ... whether or not such claims are based exclusively on the terms of this Plan, shall be submitted to arbitration in Boston, Massachusetts if the parties are

6. Did *that writing* specify the hearing locale requested?

7. Did Mr. Hutson file three copies of *that writing*, together with the filing fee and three copies of the arbitration provision, with the AAA?

8. · Did Mr. Hutson make *that filing* before late 1992?

Amended Application and Motion to Vacate Modified Arbitration Award # 31 at 9 (emphasis in original).

unable to resolve their dispute after good faith efforts.

Amended Application And Motion to Vacate Modified Arbitration Award # 31, Exh. A.

The rules to govern any arbitration that may arise under the Plan were the Commercial Arbitration Rules of the American Arbitration Association. (*Id.*) The Plan also contained a Limitation of Actions provision which stated:

> Neither party may demand arbitration or institute any lawsuit in any form arising out of this Plan, or arising in any way out of the employment relationship between the parties, more than two (2) years after the claim or cause of action arises.

Amended Application And Motion to Vacate Modified Arbitration Award # 31, Exh. A.

Finally for present purposes, the arbitrator of any dispute under the Plan was to "honor the terms and conditions of this Plan and construe said Plan in accordance with the laws of the Commonwealth of Massachusetts." (*Id.*)

In the instant case, the parties stipulated to the issues to be determined by the arbitrator:

> Was the Claimant barred by the Sales Compensation Plan from filing a claim for arbitration under the two-year limitation provision of that Plan?

> If the Claimant was not barred from filing a claim, is any compensation and/or commission due to Claimant on the 1990 sale of Bull HN equipment to the North Carolina Agricultural Extension?

Amended Application And Motion To Vacate Modified Arbitration Award # 31, Exh. C.

The arbitrator's resolution of the first issue in the Modified Phase I Award was as follows:

1. Limitations of Action (sic):

a. Based on the evidence produced at the hearings, the Arbitrator finds the Bull HN Information Systems, Inc. (hereinafter referred to as the "Respondent") Sales Compensation Plan (the "SCP"—Claimant's Exhibit 3) to be an archetypal contract of adhesion.

b. As a contract of adhesion, Section VI.F ("Limitation of Actions") is severable and does not bind Charles Hutson (hereinafter referred to as the "Claimant") in this matter. Consistent with the Respondent's own arguments, it thus falls to the Arbitrator to determine the timeliness of the demand for arbitration.

c. The Arbitrator specifically finds that the Claimant, by his wife, twice filed demands for arbitration to which Respondent failed to respond. Moreover, Claimant was involved with administrative appeals through the Respondent of certain benefit issues connected with this matter as late as 1995 for which the Respondent itself maintained that exhaustion of remedies was required.

d. The demand for arbitration was, therefore, made in a timely manner under all of the circumstances of this matter.

Amended Application And Motion To Vacate Modified Arbitration Award # 31, Exh. E.

It is the arbitrator's decision regarding the Limitation of Actions provision of the Plan and the consequences that flow therefrom with which Bull HN takes issue.

### III. The Legal Standards

A court's authority to review arbitration awards "is extremely narrow and exceedingly deferential." *Wheelabrator Envirotech Operating Services Inc. v. Massachusetts Laborers District Council Local 1144,* 88 F.3d 40, 43 (1st Cir., 1996); *see also Service Employees International Union v. Local 1199 N.E. SEIU, AFL–CIO, CLC,* 70

F.3d 647, 651 (1st Cir., 1995); *Maine Cent. R.R. Co. v. Brotherhood of Maintenance of Way Employees*, 873 F.2d 425, 428 (1st Cir., 1989) (stating that "[j]udicial review of an arbitration award is among the narrowest known in the law."). Since the parties to an arbitration agreement have "contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's views of the facts and meaning of the contract that they have agreed to accept." *United Paperworkers International Union, AFL—CIO v. Misco, Inc.*, 484 U.S. 29, 37–38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). The Supreme Court continued, explaining that "[c]ourts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of the lower courts." *Id.* at 38, 108 S.Ct. 364.

The Federal Arbitration Act, Title 9 U.S.C. § 10(a), delineates four discrete instances in which an arbitrator's award may be vacated by a court. Moreover, § 10(a)(5) also allows for vacatur and remand to the arbitrator in the court's discretion when "the time within which the agreement required the award to be made has not expired". Title 9 U.S.C. § 10(a)(5).[4] The First Circuit has had occasion to write of the Federal Arbitration Act that "the statute does not allow courts to roam unbridled in their oversight of arbitral awards, but carefully limits judicial intervention to instances where the arbitration has been tainted in certain spe-

cific ways." *Advest, Inc. v. McCarthy*, 914 F.2d 6, 8 (1st Cir., 1990).

Vacatur of an arbitration award is also permitted under the common law test of "manifest disregard of the law." *See Advest*, 914 F.2d at 8–9; *see also Wilko v. Swan*, 346 U.S. 427, 436–7, 74 S.Ct. 182, 98 L.Ed. 168 (1953) (creating the exception); *Prudential–Bache Securities, Inc. v. Tanner*, 72 F.3d 234, 237–38 (1st Cir., 1995). The First Circuit in *Advest* identified what is required to be shown to advance successfully the manifest disregard of the law argument:

> [The challenge] depends upon the challenger's ability to show that the award is " '(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a nonfact.' "

*Advest*, 914 F.2d at 8–9 (*quoting Local 1445 United Food and Commercial Workers v. Stop & Shop Cos.*, 776 F.2d 19, 21 (1st Cir., 1985) and *Bettencourt v. Boston Edison Co.*, 560 F.2d 1045, 1050 (1st Cir., 1977)).

Further, to rise to the level of manifest disregard, "the arbitrator [must have] appreciated the existence of a governing legal rule but *wilfully* decided not to apply it." *Advest*, 914 F.2d at 10 (emphasis added). This assessment requires evaluation of the arbitrator's knowledge of the law applicable to the arbitration award as well

---

4. In pertinent part the statute reads:

    (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

    (1) Where the award was procured by corruption, fraud, or undue means.

    (2) Where there was evident partiality or corruption in the arbitrators, or either of them.

    (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to controversy; or of any other misbehavior by which the rights of any party have been published.

    (4) Where the arbitrators exceeded their powers, or so imperfectly executed from them that a mutual, final, and definite award upon the subject matter submitted was not made.

    (5) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrator.

Title 9 U.S.C. § 10(a).

as his dismissal of the law with regard to the award.

While this manifest disregard test may require the party alleging that the arbitrator erred to show more than ample proof of disregard of the law, the First Circuit in *Advest* suggested that a finding of "manifest disregard of the law" can also exist when "the governing law may have such widespread familiarity, pristine clarity, and irrefutable applicability that a court could assume the arbitrators knew the rule and, notwithstanding, swept it under the rug." *Id.*

While the power of the Court is circumscribed in the realm of arbitration, it is nonetheless meaningful. Although the Court's role is restrained, it should not be viewed as merely one to "grant carte blanche approval to any decision that the arbitrator might make . . ." *Challenger Caribbean Corp. v. Union General de Trabajadores de Puerto Rico*, 903 F.2d 857, 861 (1st Cir., 1990) (*quoting International Brotherhood of Firemen & Oilers, Local 261 v. Great Northern Paper Co.*, 765 F.2d 295, 296 (1st Cir., 1985)). The arbitrator must abide by the terms set forth in the agreement. *See Georgia–Pacific Corp. v. Local 27, United Paperworkers International Union*, 864 F.2d 940, 944 (1st Cir., 1988) (stating further that "the paramount point to be remembered in labor arbitration is that the power and authority of an arbitrator is totally derived from the collective bargaining agreement . . ."). Parties coming to resolve their dispute before an arbitrator do so with the understanding that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *McCarthy v. Azure*, 22 F.3d 351 (1st Cir., 1994) (*quoting AT & T Technologies v. Communications Workers*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648, *quoting United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).

The arbitrator gains his authority through the agreement. *See Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union Local No. 1*, 611 F.2d 580, 583–84 (5th Cir., 1980). A decision rendered by an arbitrator will usually withstand scrutiny "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Misco*, 484 U.S. at 38, 108 S.Ct. 364. In dispute resolution proceedings, the arbitrator determines the facts and interprets the contract. While "the arbitrator may not ignore the plain language of the contract," the Court may not reject the arbitrator's assessment of the facts or invalidate the arbitrator's award "on the ground that the arbitrator misread the contract." *Id.* More importantly, "the arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." *Id.; see also Executone Information Systems, Inc.*, 26 F.3d 1314 (5th Cir., 1994) (indicating that while the "essence test" is most often applied in cases involving labor relations, "we have also applied . . . [it] in other cases involving the review of arbitration awards.").

It is against this legal background that the parties' contentions must be considered.

### IV. Discussion

Bull HN contends that the arbitrator both exceeded his authority under Title 9 U.S.C. § 10(a)(4) and manifestly disregarded the law. The timeliness of the demand to arbitrate was the question that the parties intended the arbitrator to decide in this case. However, in attempting to address this issue, the arbitrator interpreted the contract to be a contract of adhesion, severed the Limitation of Actions provision and applied his own undefined standard of timeliness. Each of Bull's contentions shall be discussed in turn.

## A. Did the Arbitrator Exceed His Authority?

█ First, as noted in the prior case, "[n]either Hutson nor Bull HN has ever questioned the fact that the Plan was a contract, and that its provisions were applicable and binding upon them." *Bull HN*, 983 F.Supp. at 291. In determining that the Limitation of Actions provision in the Plan was not binding on Hutson, the arbitrator decided a question that had not been submitted to him. Consequently, I rule that the arbitrator exceeded his authority. Title 9 U.S.C. § 10(a).

## B. Did the Arbitrator Manifestly Disregard the Law?

█ The arbitrator concluded that the Plan was an adhesion contract. Under the Plan, Hutson's employment was on the basis of a promise given for performance or employment "at will." Mere disparity in the bargaining power of both sides does not necessarily give rise to an unenforceable contract of adhesion. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (stating that "[m]ere inequality in bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context.") Similarly, the Third Circuit noted in *Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175 (3 Cir., 1998) that "[u]nequal bargaining power is not alone enough to make an agreement to arbitrate a contract of adhesion." *Id.* at 184. The First Circuit has decided that for an arbitration agreement to be considered a contract of adhesion, the party making that claim would have "to show both a lack of meaningful choice about whether to accept the provision in question, and that the disputed provisions were so onesided as to be oppressive." *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 17 (1st Cir., 1999) (*quoting Seus*, 146. F.3d at 184).

█ Under Massachusetts law, contracts of adhesion are generally enforceable as long as the contracts are not "unconscionable, offend public policy, or are shown to be unfair in the particular circumstances." *Chase Commercial Corp. v. Owen*, 32 Mass.App.Ct. 248, 253, 588 N.E.2d 705, 708 (1992). Thus, even if the Plan could be interpreted as an adhesion contract, a separate showing of unconscionability must be made to sever the limitation provision. As the Restatement (Second) of Contracts clearly points out in commentary,

> It is to be emphasized that a contract of adhesion is not unconscionable per se, and that all unconscionable contracts are not contracts of adhesion. Nonetheless, the more standardized the agreement and the less a party may bargain meaningfully, the more susceptible the contract or term will be to a claim of unconscionability.

Restatement (Second) of Contracts, Section 208 (1979).

█ Unconscionability is a determination that a term or "an agreement ... is a grossly unconscionable bargain ... [and it refers to] 'a contract which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept on the other.'" *Hume v. United States*, 132 U.S. 406, 406, 10 S.Ct. 134, 33 L.Ed. 393 (1889); *see also* Restatement (Second) of Contracts, Section 208, cmt. e (1979) (stating that "[p]articular terms may be unconscionable whether or not the contract as a whole is unconscionable.").

█ Contract clauses pertaining to limitation of actions are not universally considered unenforceable. *See Hays v. Mobil Oil Corp.*, 930 F.2d 96 (1st Cir., 1991). Indeed, the law on limitation provisions is well-settled, to wit, "contracting parties may agree upon a shorter limitation period as long as it is reasonable." *I.V. Services of America, Inc. v. Inn Dev. & Management, Inc.*, 7 F.Supp.2d 79, 86 (D.Mass., 1998) (quoting *Hays* to reassert the principle); *see also Reynolds Industries, Inc. v.*

*Mobil Oil Corp.*, 618 F.Supp. 419, 423–24 (D.Mass., 1985) (indicating that limitation provision is not a contract of adhesion and is not against public policy).

▮ The arbitrator offered no reasoning for his decision to sever the limitation provision, nor were any reasons required. *See Prudential–Bache Securities, Inc. v. Tanner,* 72 F.3d 234, 240 n. 9 (1st Cir., 1995) (explaining that arbitrators "are not required to either make formal findings of fact or state reasons for the awards they issue."); *see also Labor Relations Div. of Constr. Industries of Massachusetts, Inc. v. International Bhd. of Teamsters,* 29 F.3d 742, 747 (1st Cir., 1994); *Raytheon Co. v. Automated Business Systems, Inc.,* 882 F.2d 6, 9 (1st Cir., 1989). In light of the governing legal principles and the lack of any evidence whatsoever that the limitation provision in the Plan is either "unconscionable, offend[s] public policy, or [is] shown to be unfair in the particular circumstances" or is otherwise unreasonable, and the lack of any findings to that effect, it is my opinion that the arbitrator manifestly disregarded the law. The decision is "based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling." *Advest,* 914 F.2d at 8–9. In my judgment, what occurred here is more than just a "painfully clear" error of law. *Id.* at 8.

In sum, the arbitrator, under the guise of finding the "Limitation of Actions" provision to be unenforceable, ignored the plain terms of the contract agreed to by the parties and supplanted their agreement with a personal undefined standard of timeliness.[5] It quite simply cannot be said that in these circumstances the arbitrator's decision drew its essence from the Plan. *See El Mundo Broadcasting v. Unit-*ed *Steelworkers of America,* 116 F.3d 7, 10 (1st Cir., 1997).

▮ For the reasons stated, the Modified Arbitration Award must be vacated. While awards that have been vacated are normally remanded to the same arbitrator, a few courts have chosen to remand to a different arbitrator. *See Grand Rapids Die Casting Corp. v. Local Union No. 159,* 684 F.2d 413, 415–17 (6th Cir., 1982) (allowing the parties to agree to another arbitrator since the "previous arbitrators outburst against the language of the contract compromise[d] the appearance of impartiality"). *Compare with Westvaco Corp. v. Local 579, United Paperworkers, International Union,* 1992 WL 121372 *9–10 (D.Mass.) (distinguishing this case from Grand Rapids Die Casting since there is no finding of bias or prejudice on the record so as to compel the court to "disturb the parties contractual agreement to submit their dispute to [the arbitrator], who is already familiar with the facts and the parties.") *See id.* at *9. Indeed, on remand the court may use its discretion to seek rehearing before a new arbitrator. The Sixth Circuit in *Aircraft Braking Systems v. Local 856, UAW,* 97 F.3d 155, 162–63 (6th Cir., 1996) held that remand to a new arbitrator was correct because the arbitrator failed to decide the issues submitted by the parties and ignored the prior decision of the District Judge on the issue, thereby "indicat[ing] his feelings on the issue." *See id.* at 162; *see also In re A.H. Robins Company, Inc.,* 230 B.R. 82, 86 (E.D.Va., 1999) and cases cited therein. At present, remand is necessary based on the failure of the arbitrator to render an award that addresses the issue submitted to arbitration. In this second proceeding, the arbitrator has yet again chosen to create his "own notions of industrial justice" rather than follow the terms of the agree-

---

5. Hutson argues at length that it was within the arbitrator's province to interpret the term "demand" in the Limitation of Actions provision in a general way rather than as a term of art under the Commercial Arbitration Rules and, therefore, find the demands made in his wife's letters to have been timely. (# 36 at 6–10) This argument need not be addressed for the simple reason that the arbitrator did not construe the meaning of the Limitation of Actions provision at all; rather, he severed it from the contract.

ment and the governing law. Circumstances require that on remand, this case be directed to a different arbitrator.

### V. Conclusion and Order

For the reasons stated, it is ORDERED that the Amended Application and Motion to Vacate Modified Arbitration Award (# 31) be, and the same hereby is, AL-LOWED to the extent that the arbitrator's Modified Phase I award is VACATED and the matter is remanded with instructions to assign the case to a different arbitrator for further proceedings consistent with the within Opinion. It is FURTHER OR-DERED that the Amended Application And Motion To Vacate Modified Arbitration Award (# 31) be, and the same hereby is, otherwise DENIED. It is FURTHER ORDERED that the Motion of Defendant Charles J. Hutson to Confirm Modified Arbitration Award (# 35) be, and the same hereby is, DENIED. Judgment shall enter accordingly.

